**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| BROOKE RYAN, individually and on behalf of all others similarly situated | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:20-cv-02164-JMG |
| | : | |
| TEMPLE UNIVERSITY, | : | |
| Defendant. | : | |

---

## MEMORANDUM OPINION

**GALLAGHER, J.**                                                    **April 22, 2021**

**I.        OVERVIEW**

The college experience is unlike any other.  Alumni of our nation's many colleges and universities invariably reminisce on the knowledge gained, the challenges met, and the friendships forged during what is frequently dubbed "the greatest years of our lives."  Unfortunately, as with essentially every other aspect our lives over the past year, the college experience has not been immune from the depredation of the COVID-19 pandemic.  Emergency quarantine measures and the attendant specter of serious health consequences has forced our institutions of higher learning to seek alternative accommodations to ensure continuity during these uncertain times.  The decision by many schools to transition classes online has understandably frustrated the hopes of countless students.  However, subjective expectations and extenuating circumstances do not abrogate the fundamental tenets of contract law.

Plaintiffs Brooke Ryan and Christina Fusca brought suit in the instant matter against Temple University as a result of its decision to move classes to an online forum in the Spring semester of 2020.  According to Plaintiffs, this constituted a breach of Temple's implied contractual duty to provide in-person instruction and allow students access to campus facilities.  Likewise, Plaintiffs

allege that the University unjustly enriched itself by way of reduced maintenance and staffing costs resulting from the closure of campus. Plaintiffs seek recovery of the difference in value between the online learning provided and the in-person instruction for which they allegedly contracted, as well as a refund of the fees they paid for access to University facilities and services.

The present Motion by Temple University seeks dismissal of Plaintiffs' claims for breach of contract and unjust enrichment. Defendant argues that Plaintiffs' implied contract theory is precluded by the existence of an express contract governing the payment of tuition and fees. Since this express contract provides no promise of in-person instruction and access to campus under any circumstances, Defendant contends that Plaintiffs cannot plausibly allege that Defendant violated a contractual duty, thereby defeating their claims for breach of contract. Similarly, Defendant asserts that Plaintiffs' unjust enrichment claims must fail due to the existence of an express agreement between the Parties.

For the reasons set forth below, the Court finds that the payment of tuition and fees was subject to the terms and conditions of an express contract between Temple University and its students. This contract did not include a duty to provide in-person instruction or unconditional access to campus. The Court also finds that, under Pennsylvania law, this express agreement bars Plaintiffs' claims for breach of implied contract and unjust enrichment. Accordingly, Defendant's Motion is granted.

## II.     FACTUAL BACKGROUND

### a.  Allegations

Plaintiffs Brooke Ryan and Christina Fusca were enrolled as undergraduate and graduate students, respectively, at Defendant Temple University for the Spring semester beginning on January 13, 2020. *See* Compl. ¶¶ 15, 16, 40. Prior to enrollment, Plaintiffs were required to pay tuition for the Spring 2020 semester. *Id.* ¶ 23. Additionally, all students paid a University Services

Fee to cover, among other things, the University's computer lab facilities, student activities, and student health services.[1]  *Id.* ¶ 33.  On March 11, 2020, Temple University announced that, as a result of the COVID-19 pandemic, all classes would be taught online for the remainder of the semester.  *Id.* ¶ 43.  Students were also asked to return to their homes.  *Id.* ¶ 44.  On March 16, 2020, Philadelphia Mayor Jim Kenney announced an indefinite, city-wide shut down of all businesses except for those deemed essential.  Def.'s Mot. 3.  On March 19, 2020, Pennsylvania Governor Tom Wolf announced that only life-sustaining businesses could remain open throughout the state.  *Id.* at 4.

From March 16, 2020, through the end of the semester, Temple University faculty continued teaching classes online.  Compl. ¶ 43; Def.'s Mot. 4.  The Spring 2020 semester concluded on May 5, 2020.  Compl. ¶ 41.  Temple University thereafter issued prorated refunds to students for parking, on-campus housing, and meal plans.  *Id.* ¶ 54.  On May 5, 2020, Plaintiff Ryan, later joined by Plaintiff Fusca, filed a class action lawsuit against Defendant Temple University on behalf of "[a]ll people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied live, in-person instruction" (the "Tuition Class") and "[a]ll people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester" (the "Fees Class").  *Id.* ¶ 56.  Plaintiffs seek recovery of "the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received" as a result of Defendant's purported breach of contract (Counts I and III).  *Id.* ¶ 120.  Likewise, Plaintiffs request disgorgement "to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide" under a theory of unjust enrichment (Counts II and IV).  *Id.* ¶ 121.

---

[1] Plaintiffs Ryan and Fusca paid all required tuition and fees prior to enrollment.  Compl. ¶¶ 23, 36.

### b. Procedural History

Ms. Ryan filed her Complaint in this matter on May 5, 2020 (ECF No. 1). On July 15, 2020, Temple University filed a Motion to Dismiss (ECF No. 10).[2] Ms. Ryan subsequently filed an Amended Complaint on July 29, 2020 (ECF No. 11). On August 6, 2020, the Parties stipulated that Ms. Ryan would move to consolidate the instant case with that of Plaintiff Christina Fusca, without opposition by Temple University (ECF No. 12). The Court granted Plaintiff's Motion on August 21, 2020, and Plaintiffs Ryan and Fusca filed a Consolidated Second Amended Complaint on September 4, 2020 (ECF No. 15). On October 5, 2020, Temple University filed a Motion to Dismiss the Consolidated Second Amended Complaint (ECF No. 16). Plaintiffs filed a Response in Opposition to Defendant's Motion on November 4, 2020 (ECF No. 17). On November 19, 2020, Temple University filed a Reply in Further Support of the Motion (ECF No. 19).

### III.   LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all material factual allegations in a well-pleaded complaint and construe all reasonable inferences in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). A well-pleaded complaint requires more than mere labels and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant fair notice of the claim against him and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege facts that "raise a right to relief above the speculative level." *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). While not required to establish each element of the cause of action giving rise to the complaint, the pleadings must include factual assertions that "raise

---

[2] Defendant's Motion was dismissed as moot on March 15, 2021 (ECF No. 29).

a reasonable expectation that discovery will reveal evidence of the necessary elements[s]." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

A court reviewing a motion to dismiss should only consider the complaint, exhibits attached thereto, matters of public record, and "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Generally, the court may not contemplate matters extraneous to the pleadings. *Savage v. Temple University*, No. 19-6026, 2020 WL 3469039, at *2 (E.D. Pa. June 25, 2020) (citing *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). A motion to dismiss must be treated as one for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). However, the court may review documents that are "integral to or explicitly relied upon in in the complaint…without converting the motion to dismiss into one for summary judgment." *Savage*, 2020 WL 3469039, at *2.

## IV.   ANALYSIS

### a.   Breach of Contract (Counts I & III)

Plaintiffs allege that they, along with other members of the Tuition Class, entered into individual contracts with Defendant which provided that Plaintiffs would pay tuition in exchange for course enrollment, access to campus facilities, and in-person instruction in a physical classroom. Compl. ¶ 70. According to Plaintiffs, the terms of this contract were implied through Defendant's publications describing student life at the University. *Id.* ¶¶ 71, 74. Plaintiffs explain that Defendant's website, academic catalog, marketing materials, and mission statement make repeated references to the on-campus experience as a benefit of enrollment. *Id.* ¶¶ 80-85. Likewise, Plaintiffs claim that the student bulletin evidences Defendant's promise to provide in-person classroom instruction by designating specific classroom locations for each class. *Id.* ¶¶ 97-103. Plaintiffs also assert that Defendant treated online and in-person classes as separate and distinct

products by listing them separately and charging more for the latter.  *Id.* ¶¶ 101, 109-110.  Finally, Plaintiffs argue that the terms of these implied contracts were evidenced by the Parties' prior course of conduct, in that Plaintiffs attended class in physical classrooms and Defendant provided in-class instruction prior to the outbreak of COVID-19.  *Id.* ¶¶ 104-108.

Based on these purported terms, Plaintiffs claim that they accepted Defendant's offer for in-person classes by paying tuition prior to enrolling for the Spring 2020 semester.  *Id.* ¶ 109. However, by transitioning classes to online instruction without reducing or refunding tuition accordingly, Plaintiffs contend that Defendant breached these implied contracts.  *Id.* ¶ 114. Plaintiffs assert that they have suffered damages as a result of this breach by being denied in-person instruction.  *Id.* ¶ 121.  Therefore, Plaintiffs allege that they are entitled to the difference in the fair market value between the online learning provided by Defendant and the in-person instruction for which they contracted.  *Id.*

In addition to tuition, the University charges all enrolled students a mandatory, campus-wide University Services Fee.  *Id.* ¶ 139.  This fee is meant to fund, among other things, computer equipment and lab facilities, access to student activities, and student health treatment services.  *Id.* ¶ 142.  Plaintiffs allege that they, and other members of the Fees Class, paid this fee in exchange for access to the services and benefits related to those fees.  *Id.* ¶ 143.  As with the Tuition Class, Plaintiffs argue that Defendant breached this agreement by moving all classes online for the remainder of the Spring 2020 semester, closing most campus buildings, and canceling most student activities.  *Id.* ¶ 145-146.  Plaintiffs reason that they are entitled to a refund of those fees since they were deprived of the value of the benefits and services those fees were intended to cover.  *Id.* ¶ 148.

Defendant counters that the express contractual terms to which Plaintiffs agreed prior to enrollment for the Spring 2020 semester defeat their breach of implied contract claims in Counts I and III.  Def.'s Mot. 5.  According to Defendant, these terms were set forth in the Student Financial

Responsibility Agreement that all students must sign prior to enrollment, as well as the Tuition and

Fees Policy in the University's Student Bulletin.  *Id.*  Defendant emphasizes that neither of these

documents stated that classes would be conducted exclusively on a live, in-person basis, or that

tuition or the University Services Fee would be refunded if classes were taught online and campus

was closed due to exigent circumstances.  *Id.* 5-6.  In fact, Defendant argues, Plaintiffs expressly

agreed that they would remain responsible for all tuition and fees resulting from their class

registration following the drop/add deadline of January 27, 2020, which preceded the switch to

online classes by nearly two months.  *Id.* at 6.  Defendant therefore asserts that Plaintiffs have failed

to state a claim for breach of contract because the University provided, and Plaintiffs attended,

uninterrupted classes for the entire Spring semester.  *Id.* at 7.  Further, Defendant alleges that

Plaintiffs' implied contract theory must fail because, under Pennsylvania law, no implied contract

can be found where the terms of an express agreement between the parties govern the same subject-

matter.  *Id.* at 12.  Having purportedly failed to identify a contractual duty to provide in-person

instruction under all circumstances, Defendant argues that Counts I and III of the Complaint should

be dismissed.[3]  *Id.* at 11.

In order to maintain a breach of contract claim under Pennsylvania law, a plaintiff must

allege: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by

the contract; and (3) resultant damages."  *Vurimindi v. Fuqua School of Business*, 435 F. App'x 129,

132-33 (3d Cir. 2011).  Students alleging a breach of contract claim against a university must

identify "a specific and identifiable promise that the school failed to honor."  *Id.* at 133 (quoting

*Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. 1999)).  This requires more than mere

allegations "that the school did not provide a good or quality education."  *Id.*  A complaint that fails

---

[3] Defendant's Motion offers two additional bases for dismissal of the Complaint.  However, because the Court finds
Defendant's arguments concerning the express contract governing the payment of tuition and fees to be dispositive, it
will not consider the merits of these alternative grounds for dismissal.

to sufficiently plead one of these elements is subject to dismissal.  *See Assembly Tech. Inc. v. Samsung Techwin Co.*, 695 F. Supp. 2d 168, 180 (E.D. Pa. 2010).

Plaintiffs' allegations do not state a plausible claim for breach of an express or implied contract by Defendant.  The Student Financial Responsibility Agreement is a fully integrated, binding contract which sets forth the material terms and conditions concerning the payment of tuition and all applicable fees prior to class registration.  As contemplated in the Agreement, Plaintiffs paid all required tuition and fees and, in exchange, Defendant allowed Plaintiffs to register for classes and provided uninterrupted coursework for the entire Spring semester.  The Agreement contained no specific and identifiable promise of exclusively in-person instruction or unqualified access to campus facilities.  Additionally, Plaintiffs' implied contract theory is precluded by the existence of this express contract governing the payment of tuition and fees.  The Complaint therefore does not plausibly allege that Defendant breached an implied or express contractual duty to provide in-person classes under any and all circumstances.  As explained in further detail below, Counts I and III of the Complaint must be dismissed.

### i.   Student Financial Responsibility Agreement and Tuition and Fees Policy

Plaintiffs argue that the Student Financial Responsibility Agreement is not a binding contract because it lacks mutual consideration, contains no material terms to which both Parties were bound, and was not signed by the University or its representatives.  Pls.' Resp. 4-7.  As interpreted by Plaintiffs, the Agreement imposes no obligation on Defendant and only requires students to pay tuition and fees associated with registration.  *Id.* at 5-6.  Furthermore, Plaintiffs contend that the Agreement fails to address what services the University would provide, the duration of those services, the price to be paid, or the rights and remedies of either party regarding the services to be rendered.  *Id.* at 7.  Plaintiffs conclude that the Agreement is ambiguous, incomplete, and is therefore inapplicable to their claims.  *Id.* at 8-12.

Defendant alleges that because the Student Financial Responsibility Agreement includes mutual consideration and clearly articulated material terms, it is binding and enforceable on both Parties. Def.'s Reply 2. Prior to their execution of the Agreement, Defendant asserts that Plaintiffs had no obligation to pay tuition for the Spring 2020 semester and the University was not required to allow them to register for classes. *Id.* at 3. Upon signing the Agreement, however, Plaintiffs purportedly agreed to pay all assessed tuition fees and Defendant agreed to allow Plaintiffs to complete their registration for the Spring semester. *Id.* In other words, according to Defendant, the Parties each entered into an agreement to do what they were not otherwise bound to do. *Id.* at 2. Defendant argues that the Agreement evidences the bargain contemplated between the Parties and sets forth the material terms governing the payment of tuition and fees. *Id.* 2-3. Additionally, Defendant emphasizes that these terms and conditions are devoid of any express promises concerning in-person instruction. *Id.* at 4.

"The question of whether an undisputed set of facts establishes a contract is a matter of law." *Ecore International, Inc. v. Downey*, 343 F. Supp. 3d 459, 487 (E.D. Pa. 2018) (quoting *Mountain Props, Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. 2001)). An enforceable contract requires: (1) mutual assent by the parties to be bound; (2) terms set forth with sufficient clarity so as to be specifically enforced; and (3) mutual consideration. *See Shell's Disposal and Recycling, Inc. v. City of Lancaster*, 504 Fed. App'x 194, 200 (3d Cir. 2012). In ascertaining the existence of mutual assent, the relevant inquiry is what a reasonable person would understand the intent of parties to be given their objective manifestations. *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582-84 (3d Cir. 2009). With regards to the terms of an agreement, the parties must articulate the material details of the bargain such that the extent of their obligations is evident on the face of the contract. *See id.* These promises to perform, or forebear from performing, in exchange for promises of performance or forbearance from the other party, must be

supported by valid consideration.  *Zokaites Properties, L.P. v. Bell-Pug, Inc.*, No. 92 WDA 2018, 2018 WL 6058578, at *2-3 (Pa. Super. Nov. 20, 2018).  Valid consideration exists where each party has suffered a detriment, has done something they were not otherwise bound to do, or promises to perform, or refrain from doing, some act.  *See Ohama v. Markowitz*, 434 F. Supp. 3d 303, 315 (E.D. Pa. 2020).

Discerning the intent of the parties is the primary objective of contract interpretation, and the strongest expression of the parties' intent is the language of the contract itself.  *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75-76 (3d Cir. 2011).   When the terms of a contract are unambiguous, the court must give effect to the plain meaning of the agreement as a matter of law. *See Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 907 A.2d 462, 468-69 (Pa. 2006); *Murphy v. Duquesne University of the Holy Ghost*, 777 A.2d 418, 432 (Pa. 2001).  "The parties' disagreement as to the proper construction of the contract does not render a contract ambiguous." *Pacific Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F. 3d 417, 436 (3d Cir. 2012). Rather, "contractual terms are ambiguous if they are subject to more than one reasonable interpretation" when applied to the facts of the case.  *Murphy*, 777 A.2d at 432 (quoting *Madison Construc. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).  On the other hand, "[c]lear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract."  *American Eagle*, 584 F.3d at 587 (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. 1993)).

Given its plain and unambiguous language, the Court finds that the terms of the Student Financial Responsibility Agreement are set forth with sufficient clarity, evidence mutual assent between the Parties, and feature an exchange of valid consideration.

The Agreement states in relevant part:

> I acknowledge that by registering for classes at Temple University, I agree to pay all assessed tuition and fees that result from my initial registration and/or future drop/add activity. I understand that I am responsible to pay for all classes in which I am registered after the final day of the term's drop/add period, which is published on the University's Academic Calendar…I agree that Temple University may restrict my right to register or receive other University services in accordance with University policies until I pay all past due balances…I also understand that the University reserves the right to cancel any registration because of a delinquent unpaid debt…I understand that returned payments and/or failure to comply with the terms of any payment agreement I sign may result in cancellation of my current registration and/or suspension of my eligibility to register for future semesters.

> Def.'s Mot. 6 n.6.

While Plaintiffs contend that the Agreement itself is "ambiguous," they have not identified which terms necessitate further explication.  Pls.' Resp. 8.  Such a conclusory and threadbare characterization of the document as a whole is entitled to no deference by the Court.  *See Pearson v. Tanner*, 513 Fed. App'x 152, 153 (3d Cir. 2013).  Likewise, as the Court cannot discern any essential words or phrases that are subject to more than one reasonable interpretation, it must give effect to the plain meaning of the terms of the Agreement.

The Agreement states that students promise to pay all tuition and fees associated with enrollment in all classes for which they register and do not drop following the deadline published in the University's Academic calendar.  In exchange, the University agrees to allow students to register for the classes they wish to take during the semester.  Accordingly, the Agreement binds each party to do an act that they were not otherwise bound to do.  A student's failure to pay all applicable tuition and fees, or the University's failure to facilitate class registration, would result in a breach of these terms.  The Agreement therefore sets forth the rights and duties of each Party with sufficient clarity so as to be enforceable.  It also evidences an exchange of valuable consideration by both the

students and the University.[4]

While the Agreement does not include the specific cost of tuition and applicable fees, this omission does not preclude the formation of a valid contract. The Parties' manifestation of mutual assent and the Agreement's otherwise sufficiently definite terms render this contract fully enforceable.[5] *See Ecore International*, 343 F. Supp. 3d at 489 (citing *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 667 (3d Cir. 1998)). Similarly, the absence of a University representative's signature is of no consequence. The terms of the contract do not require the signatures of each Party as a prerequisite to it becoming fully operative. It is a well-settled tenet of Pennsylvania contract law that, absent such a provision, a contract need not be signed so long as the parties indicate their acceptance of its terms. *See Ohama,* 434 F. Supp. 3d at 315.

Plaintiffs allege that, even if the Agreement is a valid contract, it is incomplete and requires consideration of extrinsic evidence to fully ascertain the scope of its terms and conditions. Pls.' Resp. 8. In support of their argument, Plaintiffs emphasize that the terms of the Agreement do not include an integration clause. *Id.* However, a writing is conclusively deemed to be a complete contractual arrangement when its terms impose explicit and definitive legal obligations upon the parties. *See SodexoMAGIC, LLC v. Drexel University*, 333 F. Supp. 3d 426, 448 (E.D. Pa. 2018). The absence of an integration clause does not automatically necessitate reference to outside evidence. *See Marano v. Fulton Bank, N.A.*, No. 812. MDA 2016, 2017 WL 1242793, at *3 (Pa. Super. Apr. 4, 2017). To the contrary, it merely requires the court to examine the text of the agreement to determine its completeness. *Id.* The Court finds that the plain terms of the Agreement

---

[4] Plaintiffs do not contend that the Agreement lacks evidence of mutual assent, and such an argument would be to no avail. The University manifested its intent to be bound by providing the Agreement to Plaintiffs and subsequently performing under its terms by allowing Plaintiffs to register for classes. Plaintiffs manifested their intent to be bound by signing the Agreement and paying tuition and fees to the University.
[5] The Tuition Rate Schedule can be found on the University Bursar's Website, along with the Student Financial Responsibility Agreement, the University's Tuition and Fees Policy, and the drop/add deadline for each semester. Def.'s Reply 4-5.

impose definite and clear contractual obligations upon each of the Parties, requiring payment of tuition in exchange for class registration.

The Agreement also fully governs the contractual duties concerning the payment of the University Services Fee.  The unambiguous terms of the Agreement state that Plaintiffs' obligation to pay "*all* assessed tuition *and fees*" derives from the act of registering for classes.  Def.'s Mot. 6 n.6 (emphasis added).  The Agreement then provides that "Temple University may restrict my right to register *or receive other University services* in accordance with University policies until I pay all past due balances."  *Id.*  This tends to undermine the notion that payment of the University Services Fee was contingent on a student's use or access to a particular facility or service.  "In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly."  *Valley Forge Military Academy and College v. O'Brien*, No. 2814 EDA 2018, 2019 WL 6716360, at *5 (Pa. Super. Dec. 10, 2019) (quoting *Profit Wize Marketing v. Wiest*, 812 A.2d 1270, 1274 (Pa. Super. 2002)).  The terms of the Agreement plainly state that students agree to pay *all* assessed fees resulting from their registration.  Failure to do so could result in denial of class registration and other University services.  The Court finds that the plain terms of the Agreement contemplate payment of the University Services Fee as a condition of enrollment and use of campus facilities,

not a guarantee of in-person instruction or unfettered access to campus under any circumstances.[6]

Having determined that the Student Financial Responsibility Agreement is a fully integrated, valid contract governing the payment of tuition and fees, the Court concludes that Plaintiffs' allegations do not state a plausible claim for breach of contract.  Students alleging a breach of contract claim against a university must identify "a specific and identifiable promise that the school failed to honor." *Vurimindi*, 435 F. App'x at 133.[7]  Plaintiffs have not identified any provision within the Agreement stating that Temple University would provide in-person classes under all circumstances or that tuition and fees would be refunded should classes be moved to an online format.[8]  While Plaintiffs' internal, subjective expectations may have anticipated a specific

---

[6] The Agreement states that "Temple University may restrict my right to register or receive other University services *in accordance with University policies* until I pay all past due balances."  *Id.* at 6 n.6 (emphasis added).  In discerning the terms of the Agreement, the Court must read the contract as a whole and give effect to each of its provisions.  *See Com. ex rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015).  Given the explicit reference to "University policies," embedded within the provisions concerning the payment of tuition and fees, the Court finds that the provision regarding "University policies" incorporates by reference the University's Tuition and Fees Policy.  *See Chesapeake Appalachia, LLC v. Scout Petroleum LLC*, 809 F.3d 746, 761 (3d Cir. 2016) (document may be incorporated by reference when contract makes clear reference to a separate document, its identity may be ascertained, and incorporation will not result in surprise or hardship).  The identity of this document is clearly ascertainable in light of its presence on the same web page as the Agreement itself, in addition to the descriptive heading "Tuition and Fees Policy."  Likewise, Plaintiffs' filings indicate their familiarity with these policies.  Plaintiffs' obligation to pay "all assessed tuition and fees" was therefore subject to the Tuition and Fees Policy stating that the University Services Fee is a flat, non-refundable fee.  *See* Def.'s Mot. 7 n.9.  This lends further weight to Defendant's position that payment of the University Services Fee was not predicated on students' use or access to University facilities or services.  It does not, however, invite a generalized review of other University publications, as urged by Plaintiffs.  The explicit reference to University policies falls squarely within the terms of the Agreement.  Likewise, the specific policies contemplated by the Agreement are ascertained though consideration of the context in which they are referenced.  By incorporating the Tuition and Fees Policy into the terms of the Agreement, it becomes part of the Agreement itself, thereby limiting the Court's review to the four corners of the Agreement.

[7] *See also Utah v. Strayer University*, 667 Fed. App'x 370, 371 (3d Cir. 2016) (breach of contract claim without reference to specific and definite terms that were violated constitutes conclusory allegation); *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016) (aspirational statements by university are not definite contractual terms which can give rise to breach of contract claim); *Harris v. Saint Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, at *3 (E.D. Pa. May 13, 2014) (student's breach of contract claims against university based solely on conclusory allegations insufficient to survive motion to dismiss); *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 655 (E.D. Pa. 2012) (failure to specify which services university had a duty to provide invites generalized review of educational curriculum from which courts typically refrain); *Bradshaw v. Pennsylvania State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) (court cannot find breach of contract where plaintiff does not allege specific terms that were violated).

[8] Defendant notes that the University continued providing remote access to many student services and facilities during the pandemic, including Student Health Services, the University Writing Center, Disability Resources and Services, Academic Advisory Services, the Wellness Resource Center, the Student Success Center, the Career Services Center, and Library Services.  Def.'s Mot. 7.

instructional experience that was frustrated by the COVID-19 pandemic, the explicit terms of the contract create no corresponding obligation which Defendant agreed to honor. *See American Eagle*, 584 F.3d at 582.

Defendant agreed to permit Plaintiffs to register for classes in exchange for the payment of all applicable tuition and fees. Plaintiffs satisfied their duty by paying Defendant according to the terms of the Agreement. Defendant fulfilled their obligations under the contract by allowing Plaintiffs to register for classes and providing uninterrupted coursework for the entire semester.[9] Plaintiffs have not identified a contractual duty that Defendant breached when it decided to transition classes to an online forum. Therefore, the Complaint fails to adequately plead an essential element necessary to support Plaintiffs' claims for breach of contract, subjecting those claims to dismissal.

### ii.  Implied Contract Theory

Plaintiffs argue that Defendant had a duty, under the terms of an implied contract, to provide in-person classes and allow access to all campus facilities during the entire Spring semester. *See* Compl. ¶ 70. This contract was purportedly implied through representations on the University website, academic catalogs, student handbooks, marketing materials, and by the Parties' prior course of conduct. *Id.* ¶¶ 71, 104. According to Plaintiffs, statements concerning the on-campus experience and benefits of attending school in Philadelphia vested students with the contractual right to be physically present on campus and enjoy campus facilities. *Id.* ¶¶ 71-73. Plaintiffs claim that Defendant breached this duty by moving classes online and closing campus for the remainder of the Spring semester without reducing or refunding tuition. *Id.* ¶ 114.

Defendant counters that Plaintiffs' implied contract theory must fail because, under

---

[9] A cognizable claim for breach of contract may lie where a student shows that they were denied the academic instruction for which they registered. *See Manning v. Temple University*, No. 03-4012, 2004 WL 3019230, at *12 (E.D. Pa. Dec. 30, 2004).

Pennsylvania law, no implied contract can be found where the terms of an express agreement between the parties govern the same subject-matter. Def.'s Mot. 12. Since the Student Financial Responsibility Agreement sets forth the terms and conditions regarding the payment of tuition and fees, Defendant asserts that this precludes Plaintiffs from also asserting the existence of an implied contract. *Id.* at 11. Defendant maintains that, nevertheless, University publications and prior course of conduct could not create an enforceable contract between the Parties. *Id.* at 13. Additionally, Defendant emphasizes that none of these implied terms include an explicit promise to provide in-person instruction. *Id.*

Courts may infer an implied contract where the parties manifest an agreement upon mutual obligations by virtue of their actions. *See Weiss v. Thomas Jefferson University*, No. 3103 EDA 2017, 2019 WL 2501483, at *7 (Pa. Super. June 17, 2019). A complaint that advances claims under an implied contract must show that there was a meeting of the minds concerning the binding rights and duties therein. *See Hirsch v. Schiff Benefits Group, LLC*, No. 10-2574, 2011 WL 1166127, at *3 (E.D. Pa. Mar. 28, 2011). However, "no implied-in-fact contract can be found when…the parties have an express agreement dealing with the same subject." *Cohn v. Pa. State. Univ.*, No. 19-2857, 2020 WL 738496, at *10 (E.D. Pa. Feb. 12, 2020) (quoting *In re Penn Central Transp. Co.*, 831 F.2d 1221, 1229 (3d Cir. 1987)). When the parties have intentionally reduced their agreement to a written contract, it "is not only the best, but only evidence of the agreement." *Seifert v. Prudential Ins. Co. of America*, No. 13-7637, 2014 WL 2766546, at *6 (E.D. Pa. June 18, 2014) (citing *Penn Central Transp. Co.*, 831 F.2d at 1229).

Plaintiffs' implied contract theory is precluded by the existence of an express contract concerning the same subject-matter as the alleged implied contract. The Student Financial Responsibility Agreement is the controlling contractual instrument setting forth the terms and conditions of Plaintiffs' payment of tuition and fees. Plaintiffs have failed to explain how the object

of this express agreement is not the same as that covered under the purportedly implied contract between the Parties.  Having found that the Student Financial Responsibility Agreement establishes the rights and responsibilities of the Parties regarding payment of tuition and fees, the Court need not venture beyond its four corners in search of terms governing the same.

Even if the Court found that no express contract controlled in this case, Plaintiffs' claims concerning an implied contract would still lack merit.  As an initial matter, school publications are generally not a valid source of contractual obligations under these circumstances.[10]  *Cohn*, 2020 WL 738496, at *9.  "Vague or aspirational statements cannot form the basis for an enforceable agreement where there is no indication that the parties intended to enter into a bargain."  *Id.*  For this reason, Pennsylvania courts have routinely declined to construe publications like academic catalogues, student handbooks, mission statements, or marketing materials as contracts between students and public universities.  *See Vurimindi*, 435 Fed. App'x at 134; *Carroll v. Richardson*, No. 16-1406, 2021 WL 915660, at *8 (E.D. Pa. Mar. 10, 2021); *David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016).  None of the materials cited by Plaintiffs make a specific and identifiable promise concerning in-person instruction.  The same is true with regards to the Parties'

---

[10] Pennsylvania courts have generally declined to construe published materials like student handbooks as contractual agreements between students and public universities.  *See Johnson v. Temple University – of Commonwealth System of Higher Educ.*, No. 12-515, 2013 WL 5298484, at *13 (E.D. Pa. Sept. 19, 2013); *Bradshaw*, 2011 WL 128861, at *2. Conversely, the contractual relationship between private educational institutions and enrolled students is derived from "written guidelines, policies, and procedures as contained in written materials distributed to the student over the course of their enrollment in the institution."  *Swartley*, 734 A.2d at 919.

prior course of conduct.[11]  *See Swartley*, 734 A.2d at 919.  As such, the Parties' implied contractual duties would lack sufficient clarity and could not be specifically enforced by the Court.

    **b.**    **Unjust Enrichment (Counts II & IV)**

        In addition to their breach of contract claims, Plaintiffs allege that Defendant has unjustly enriched itself by moving classes online, thereby saving significant sums of money by way of reduced maintenance and staffing costs.  Compl. ¶¶ 131, 158.  Plaintiffs assert that, although they paid substantial sums of tuition for live, in-person classes and access to campus, they did not receive the benefit of their bargain.  *Id.* ¶¶ 125, 154.  Instead, Plaintiffs contend that they were provided a materially different product, in the form of online classes, which carried a lesser fair market value. *Id.* ¶¶ 128-129.  Plaintiffs argue that Defendant failed to provide the services for which tuition was charged, and denied students access to the programs for which fees were collected.  *Id.* ¶¶ 130, 157. As a result, Plaintiffs reason that Defendant's retention of tuition and fees would be unjust under the circumstances.  *Id.* ¶ 130.

        Defendant argues that Plaintiffs' claims are legally deficient because the Parties' contractual relationship precludes the assertion of unjust enrichment.  Def.'s Mot. 25.  According to Defendant, both Parties agree that their relationship is governed by a contract, even though they disagree about

---

[11] Plaintiffs rely on *Gati v. Univ. of Pittsburgh of Com. System of Higher Education* for the proposition that promises from a university can be implied through the parties' prior course of conduct.  Pls.' Resp. 15-16 (citing 91 A.3d 723, 731 (Pa. Super. 2014)).  In *Gati*, the court acknowledged that "[a] student has a reasonable expectation based on statements of policy [by the school] and experience of former students that if he performs the required work in a satisfactory manner and pays his fees he will receive the degree he seeks."  91 A.3d at 731 (quoting *Ross v. Penn State Univ.*, 445 F. Supp. 147, 152 (M.D. Pa. 1978)).  Plaintiffs' reliance is misplaced because the primary issue in *Gati* concerned the broad discretion of colleges and universities to implement and enforce disciplinary rules within the confines of accepted academic norms.  *Id.* at 732.  The court's discussion of "the experience of former students" was in reference to a university's obligation to adhere to established procedures prior to suspending or expelling a student.  *Id.* at 731.  Conversely, the instant matter concerns the contractual obligations of students and universities as they pertain to the payment of tuition and fees.  The attendant questions of fairness, notice, and due process present in *Gati* are inapposite to the facts of this case.  As a result, the Court is unpersuaded that the holding in *Gati* is instructive as to whether the Parties' course of dealing in this case created an implied contract.  The Court further notes that the provision of in-person instruction under normal conditions is unlikely to be precedential in the wake of unprecedented circumstances.  *See, e.g.*, *Roe v. Loyola Univ. New Orleans*, No. 07-1828, 2007 WL 4219174, at *2 (E.D. La. Nov. 26, 2007) (students received benefit of continued instruction through emergency arrangements made possible by university in the wake of Hurricane Katrina).

its form and terms.  Def.'s Reply 13.  Defendant emphasizes that Plaintiffs acknowledge as much, incorporating by reference the facts supporting their preceding breach of contract allegations into their claims for unjust enrichment.  Def.'s Mot. 25.  Regardless, Defendant maintains that the Student Financial Responsibility Agreement is a binding agreement that sets forth the rights and obligations of each Party.  *Id.*  Defendant thus asserts that Plaintiffs' unjust enrichment claims must be dismissed.

The elements of unjust enrichment are (1) conferral of a benefit on the defendant by the plaintiff; (2) appreciation of that benefit by the defendant; (3) and acceptance of said benefit under circumstances where it would be inequitable for the defendant to retain it without payment of value. *WFIC, LLC v. LaBarre*, 148 A.3d 812, 819 (Pa. Super. 2016).  However, it is well-established that the doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded upon an express or implied contract.  *See Foster v. Attias*, No. 18-4853, 2020 WL 5439360, at *7 (E.D. Pa. Sept. 10, 2020) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)).  Unjust enrichment may only be pled in the alternative where "the existence of a contract is uncertain or its validity is disputed by the parties."  *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017).  Despite this general rule, the court may dismiss an unjust enrichment claim when it finds that the parties are contractually bound under an existing agreement.  *See Promark Realty Group, Inc. v. B & W Associates*, No. 02-1089, 2002 WL 862566, at *4 (E.D. Pa. May 1, 2002).

Plaintiffs assert that, since they dispute the validity and applicability of the Student Financial Responsibility Agreement, they may plead unjust enrichment as an alternative cause of action to their breach of contract claim.  Pls.' Resp. 24.  The Court disagrees.  The doctrine of

unjust enrichment is predicated on the absence of a direct relationship between the parties.[12]

*Promark Realty Group*, 2002 WL 862566, at *4 (citing *Benefit Trust Life Ins. Co. v. Union Nat'l*

*Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985)).   The Court has determined that the

Student Financial Responsibility Agreement is a fully integrated contract which governs the Parties'

relationship with respect to payment of tuition and fees.[13]   *See supra* Section III(a)(i).   This

Agreement affords each Party a contractual right to recovery in the event of a breach which

precludes a claim for unjust enrichment.   *See Benefit Trust Life Ins. Co.*, 776 F.2d at 1177;

*Sheinman Provisions, Inc. v. National Deli, LLC*, No. 08-453, 2008 WL 2758029, at *4 (E.D. Pa.

July 15, 2008).

The Parties maintained a direct relationship throughout the Spring 2020 semester in the

form of the Student Financial Responsibility Agreement.   This express contract sets forth the terms

and conditions for payment of tuition and fees prior to class registration.   The Agreement not only

precludes Plaintiffs from advancing their claims for breach of implied contact, but for unjust

enrichment as well.   As a result, Counts II and IV of the Complaint must be dismissed.

## V.      CONCLUSION

Plaintiffs' allegations do not state a plausible claim for breach of an express or implied

contract.   The Student Financial Responsibility Agreement is a fully integrated, binding contract

which governs the payment of tuition and all applicable fees prior to class registration.   Absent from

the Agreement's terms is any promise by Defendant to provide exclusively in-person classroom

instruction or unqualified access to campus.   Additionally, Plaintiffs' implied contract theory is

---

[12] Counts II and IV of the Complaint expressly incorporate by reference the facts pled in Plaintiffs' breach of contract allegations.  Compl. ¶¶ 122, 150.  This assertion of an implied contract tends to belie the notion that the Parties otherwise had no direct relationship, and instead avers to the existence of an agreement between them.  *Cf. Vantage Learning*, 246 F. Supp. 3d at 1100 n.12; *Khawaja v. RE/MAX Central*, 151 A.3d 626, 634 (Pa. Super. 2016).

[13] "[A]s a general matter, interpretation of a written agreement is a task to be performed by the court."  *American Eagle*, 584 F.3d at 587.  This approach "contributes to the stability and predictability of contractual relations and provides a method of assuring that like cases will be decided alike."  *Id.* (quoting *Gonzalez v. U.S. Steel Corp.*, 398 A.2d 1378, 1385 (Pa. 1979)).

precluded by the existence of this express Agreement between the Parties.  The Complaint therefore

fails to allege that Defendant breached an implied or express contractual duty to provide in-person

classes under any and all circumstances.  The existence of an express contract also bars Plaintiffs

from advancing their claims of unjust enrichment.  Therefore, the Complaint fails to state a claim

upon which relief may be granted and is dismissed with prejudice.[14]


BY THE COURT:


/s/ John M. Gallagher
JOHN M. GALLAGHER
United States District Court Judge

---

[14] Where a complaint is subject to dismissal under Rule 12(b)(6), the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245.  Amendment is futile when, "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 Fed. App'x 95, 98 (3d Cir. 2017) (quoting *Burlington Coat Factory*, 114 F.3d at 1434). The Court has determined that an express contract governs the relationship between the Parties with respect to payment of tuition and fees.  Plaintiffs concede that Defendant allowed them to register for classes, for which they received credit, during the Spring 2020 semester, thereby demonstrating that Defendant satisfied its obligations under the Agreement.  Additionally, the Court has found that this contract did not create a duty requiring Defendant to provide exclusively in-person classes or unqualified access to campus facilities.  Since the existence of this Agreement precludes Plaintiffs' claims for breach of an implied contract, Plaintiffs cannot show that Defendant breached an express or implied contractual duty.  Likewise, the Agreement prevents Plaintiffs from advancing their claims for unjust enrichment.  Any amendment to the Complaint would not change the fact that the Agreement exists, that the Parties satisfied their duties under the Agreement, or that Pennsylvania law prevents Plaintiffs from recovering under these alternative theories.