IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROOKE RYAN, individually and on behalf of all others similarly situated, | : : : | |
| Plaintiff, | : : | No. 20-cv-02164-JMG |
| v. | : : | CLASS ACTION |
| TEMPLE UNIVERSITY, | : : : | |
| Defendant. | : : | |
| CHRISTINA FUSCA, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : : | No. 20-cv-03434-JMG |
| v. | : : | CLASS ACTION |
| TEMPLE UNIVERSITY, | : : : | |
| Defendant. | : : | |

**STIPULATION AND ORDER**
**FOR THE PRODUCTION OF DOCUMENTS AND ESI**

This Stipulated Protocol for the Production of Documents and ESI (the "ESI Protocol") shall govern the production of documents and electronically stored information ("ESI") by the parties in the above-captioned litigation. The ESI Protocol shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the third party. Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action that requests the production of documents or ESI.

**I.    Production of Documents Originating as Paper**

1.    **TIFFs**. Documents should be produced as single-page, black and white, group

1

IV TIFFs imaged at 300 dpi. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape) where reasonably possible. TIFF image files should be provided in an "Images" folder.

Documents containing color need not be produced in color. However, the parties will consider reasonable requests for reproduction of a color document if the original contains color necessary to understand the meaning or content of the document. Any documents produced in color should be produced in JPG format.

2.   **Unitizing Documents**. In scanning paper documents, the parties will utilize logical unitization of documents such that distinct documents may not be merged into a single record, and single documents may not be split into multiple records (*i.e.*, paper documents should be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container. The parties will (or, in the alternative, require their vendors to) undertake reasonable efforts to logically unitize documents in accordance with the requirements of this paragraph. Nothing in this paragraph shall require the parties to undertake efforts to unitize documents that would be unduly burdensome. The parties agree to meet and confer to address situations in which a party believes unitizing documents would be unduly burdensome.

3.   **Parent-Child Relationships**. The parties shall undertake reasonable efforts to preserve parent-child relationships within a document family (the association between an

attachment and its parent document). The child document(s) should be consecutively produced immediately after the parent document. The parties shall undertake reasonable efforts to produce each document with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family. Nothing in this paragraph shall require the parties to undertake unduly burdensome efforts to preserve parent-child relationships within a document family for hard copy documents. The parties agree to meet and confer to address situations in which a party believes preserving parent-child relationships would be unduly burdensome.

4. **Optical Character Recognition**. The producing party shall provide optical character recognition ("OCR") text files for all documents originating as paper. Text files should be in Unicode [UTF-8] format. All references below to 'Unicode' are synonymous with UTF-8. To the extent that documents have been run through OCR software, the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

5. **Unique IDs**. Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC000000001). A single prefix with a fixed width should be used for each producing party, along with a fixed-width numerical portion. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

3

6. **Data Load Files**. Documents shall be provided with: (a) a delimited data file (.dat, .csv, or .txt) [Unicode]; and (b) an image load file (.lfp, .opt, or .dii), as detailed in Appendix 1.

7. **Redaction.** Redactions should be made using a white text box that indicates in black font the reason for the redaction.

## II. Production of ESI

8. **TIFFs**. Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. Whenever it is practical to do so, the document's original orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

9. **Extracted Text Files**. For each document, a single Unicode text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file to the extent reasonably available unless the document is an image file or contains redactions. In these instances, a text file created using OCR should be produced in lieu of extracted text.

10. **Unique IDs**. Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC000000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a

party produces in the litigation.

11.     **Parent-Child Relationships**. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

12.     **Native Format**. Excels, PowerPoints, delimited text files, audio files, video files, and additional documents of a type which cannot be reasonably converted to useful TIFF images shall be produced as native files along with extracted text and metadata identified in Appendix 2. Natively produced documents should include a Bates-numbered TIFF image placeholder stating that the document has been produced in native format.

13.     The requesting party may ask for certain other documents and/or databases initially produced in TIFF format to be produced in their native format in the event that the TIFF format is not reasonably usable. The requesting party shall identify the documents by their Bates numbers and the parties will confer on whether the documents should be produced in their unaltered native format.

14.     To the extent that the information in a native file must be redacted, the producing party may produce TIFF images with burned in redactions in lieu of a native file and TIFF placeholder image. The producing party shall make reasonable efforts to ensure redacted TIFF images of native files are legible and usable. Redactions should be made using a white text box that indicates in black font the reason for the redaction. If redacting TIFF images and to the extent that any of the following can be automated, the producing party, or its e-discovery vendor, should

make reasonable efforts to: (1) reveal hidden rows, columns, or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths and row heights to avoid numbers or other text content being truncated or appearing as "########"; (4) ensure that column and row headings print; (5) ensure that the tab name appears in the header or footer of the document; (6) process comments so that they are produced at the end of the spreadsheet; and (7) process spreadsheets so that they print across then down. If good cause exists, the requesting party may ask the producing party to manually undertake the foregoing for certain documents identified by Bates number by the requesting party to the extent the document was originally produced with concealed information. The producing party shall not unreasonably deny such a request.

15. **Request for Native Files**. Other than the file types referenced in paragraph 12 above, a producing party need not produce documents in native format. If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for such documents in native format. The producing party shall not unreasonably deny such requests. In the event the producing party agrees to produce documents in native format, the producing party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, and all extracted text and applicable metadata fields set forth in Appendix 2. The parties shall meet and confer concerning any request for native files, including the time frame for any productions, before seeking Court intervention.

16. **Tracked Changes and Comments**. To the extent that a document contains tracked changes or comments, the document should be imaged showing tracked changes and

comments.

17.     **Password Protected Files**. The producing party shall produce passwords for any password-protected files to the extent the passwords are reasonably available.

18.     **Embedded Documents.** If reasonably possible, embedded ESI documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top level parent document (*e.g.*, standalone file, email message, *etc.*) via the BegAttach and EndAttach fields referenced in Appendix 2. Related documents will be produced within a continuous Bates range. Nothing in this paragraph will require a party to extract or produce information from an embedded or attached internet link.

19.     **Data Load Files**. Documents shall be provided with: (a) a delimited data file (.dat, .csv, or .txt) [Unicode] and (b) an image load file (.lfp, .opt, or .dii) as detailed in Appendix 1. Nothing in this Order will limit the parties from discussing load file changes throughout the course of the litigation.

20.     **Metadata**. Appendix 2 sets forth the metadata fields that must be produced to the extent that metadata exists for a particular document subject to the limitations discussed below. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data. A party is not obligated to populate manually any of the fields listed in Appendix 2, with the exception of the following, which must always be populated for ESI: (a) BegBates, (b) EndBates, and (c) Custodian. To the extent the other fields listed in Appendix 2 can be automatically populated at the time of production, then those fields shall be populated.

21.     **Deduplication**. Documents should be deduplicated at the family-group level provided that the producing party identifies the additional custodians in an Additional Custodian field. A party may also de-duplicate "near-duplicate" email threads as follows: in an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message and provided that the software used to identify these "near-duplicate" threads is able to identify any substantive differences to the thread such as changes in recipients (*e.g.*, side threads, subject line changes), selective deletion of previous thread content by sender, *etc*. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate."

**III.    Production of Databases and Other Structured Data**

22.     The parties shall meet and confer prior to the production of reasonably accessible structured data ESI to ensure such ESI is produced in a reasonable, proportional, mutually agreeable, and reasonably useable format.

**IV.    Processing of Third-Party Documents**

23.     A party that issues a non-party subpoena ("Issuing Party") that requests the production of documents or ESI shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

24.     If the non-party produces documents only to the Issuing Party, to the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other parties within seven days of receipt of the production.

25.     Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or non-parties to object to a subpoena.

## V.  Miscellaneous Provisions

26. The following specifications govern the production of all documents regardless of source, unless otherwise noted in this ESI Protocol:

27. **Custodian or Originating Source**. The custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard drive, *etc*.) should be produced in such a fashion as to identify the department, group, entity, or facility. A producing party shall use a uniform description of a particular custodian across productions.

28. **Dates**. All documents that have electronically automated dates shall be processed so as to show the date and time in UTC or Eastern Standard Time.

29. **Search Terms and Custodians**. The parties will meet and confer relating to the process of searching for documents responsive to discovery, including, specifically, the identification of any search terms and custodians to the extent they are necessary in responding to specific discovery requests. The parties will continue to meet and confer on this issue as necessary to ensure that discoverable, responsive, non-privileged documents are identified and produced as efficiently as possible.

30. **Production Media**. The preferred means of producing documents is via secure FTP or secure file share. However, documents may also be produced via CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to the producing party's secure FTP or file share or (b) if the interest of preserving the confidentiality of

the information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share. To the extent possible, physical media should be write protected before it is produced.

31.   **Naming Convention for Production Media**. Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, *etc*. The compressed file should be named so as to indicate the producing party, the date of the production, and the sequence of the production (*e.g.*, "Temple Production 20230808-001"). If the production is made using physical media, the media should be labeled to include (a) text referencing that it was produced in *Ryan v. Temple Univ.*, Case No. 20-cv-02164-JMG (E.D. Pa.); (b) the Bates Number range of the materials contained on the media; (c) and the filename(s) of the compressed file(s) contained on the media such as the example included above.

32.   **Replacement Productions**. Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

33.   **Inability to Produce Metadata**. If the producing party is unable to produce metadata for a particular field, it will provide an explanation of that inability if requested by the receiving party.

34.   **Encrypted Data**. To the extent data is encrypted before it is produced, the producing party shall contemporaneously transmit the credentials necessary to decrypt the data.

35.   **Privilege Logs**. Privilege logs shall comply with Section II.C.3 of Judge Gallagher's Policies and Procedures.

36.   **Non-Waiver**. Pursuant to Rule 502(d) of the Federal Rules of Evidence and the

agreement of the parties, nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, joint defense privilege, or any other applicable privilege or immunity. Further, nothing in this ESI Protocol shall be interpreted to require the production of documents and/or ESI in response to overly broad and unduly burdensome requests. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents. The parties will not conduct an inquiry under FRE 502(b) to determine whether information was produced inadvertently. Instead, the parties will determine inadvertence solely based on the good faith representation of the Producing Party. Nothing herein shall prevent the Receiving Party from challenging the propriety of the privilege designation of any information by submitting a challenge to the Court. Fed. R. Civ. P. 26(b)(5)(B) governs the proper procedure for the notification and return of privileged information when identified by the Producing Party. If a Receiving Party identifies information that appears on its face to be privileged, the Receiving Party is under a good-faith obligation to notify the Producing Party. Such notification shall not waive the Receiving Party's ability to subsequently contest any assertion of privilege or protection with respect to the information.

37. **Protective Order**. All productions are subject to the Protective Order entered by the Court in this Action [ECF No. 53].

38. **No Effect on Cost Reimbursement.** This Order shall have no effect on any Producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

39. **Good Faith Resolution of Disputes**. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a

producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the requesting party in writing as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

**IT IS SO STIPULATED THROUGH COUNSEL OF RECORD.**

| | |
|---|---|
| */s/ Gary F. Lynch*<br>Gary F. Lynch<br>Nicholas A. Colella<br>**LYNCH CARPENTER, LLP**<br>1133 Penn Avenue, 5th Floor<br>Pittsburgh, Pennsylvania 15222<br>Telephone: 412-322-9243<br>Facsimile: 412-231-0246<br>gary@lcllp.com<br>nickc@lcllp.com<br><br>Paul J. Doolittle<br>Blake G. Abbott<br>**POULIN WILLEY ANASTOPOULO, LLC**<br>32 Ann Street<br>Charleston, SC 29403<br>Tel: 843-614-8888<br>pauld@akimlawfirm.com<br>blake@akimlawfirm.com<br><br>Stuart A. Carpey<br>**CARPEY LAW, P.C.**<br>600 W. Germantown Pike, Suite 400<br>Plymouth Meeting, PA 19462<br>Tel: 610-834-6030<br>scarpey@carpeylaw.com<br><br>*Attorneys for Plaintiff* | */s/ Roberta D. Liebenberg*<br>Roberta D. Liebenberg<br>Gerard A. Dever<br>Jessica D. Khan<br>**FINE, KAPLAN AND BLACK, R.P.C.**<br>One South Broad Street, 23rd Floor<br>Philadelphia, PA 19107<br>Tel: 215-567-6565<br>Fax: 215-568-5872<br>rliebenberg@finekaplan.com<br>gdever@finekaplan.com<br>jkhan@finekaplan.com<br><br>*Attorneys for Defendant*<br><br><br>**IT IS SO ORDERED** this 26th day of January, 2024.<br><br>BY THE COURT:<br><br>/s/ John M. Gallagher<br>JOHN M. GALLAGHER<br>United States District Judge |

# APPENDIX 1: PRODUCTION MEDIA AND LOAD FILE FORMATS

**Production Media**

- The Producing Party shall produce documents on readily accessible, computer or electronic media including CD-ROM, DVD, external hard drive (with standard PC compatible interface or access to a secure Online Repository agreed upon by the parties) or via secure FTP site. Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media. The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates Number the documents produced.

**Image Load Files**

- Production image load files shall have all corresponding images logically grouped together;
- Production volumes should only include one image load file per production volume;
- The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt or .dii[1] extension (*e.g.*, ABC001.lfp);
- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et seq*.);
- The load file shall contain one row per TIFF or JPG image;
- Every image in the delivery volume shall be contained in the image load file;
- The image key shall be named the same as the Bates number of the page;
- Load files shall *not* span across media (*e.g.*, CDs, DVDs, hard drives, *etc*.), *i.e.*, a separate volume shall be created for each piece of media delivered.

---

[1] If a .dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file itself.

**Metadata Load Files**

- The metadata load file shall use the following delimiters:

    - Column Delimiter: ASCII character (020)

    - Text Qualifier: þ ASCII character (254);

    - New line: Registered sign - ® (ASCII 174).

- Data for documents shall be produced in only one data load file throughout the productions, unless that document is clearly noted as being a replacement document or if supplemental custodian information is provided;

- The first line shall contain the field names in the order of the data set forth in Appendix 2;

- Metadata fields that are not applicable to a document shall still be populated in the data load file with Empty Quotes, e.g. |^^|^^, *etc.*;

- A carriage-return line-feed shall be used to indicate the start of the next record;

- Load files shall ***not*** span across media (*e.g.*, CDs, DVDs, hard drives, *etc.*); a separate volume shall be created for each piece of media delivered;

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (*i.e.*, ABC001.dat);

- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et seq.*).

## APPENDIX 2: ESI METADATA AND CODING FIELDS

| Field | Description |
|---|---|
| BegBates | Beginning Bates number of the document |
| EndBates | Ending Bates number of the document |
| BegAttach | Beginning Bates number of the attached documents |
| EndAttach | Ending Bates number of the attached documents |
| AttachRange | Bates number of the first page of the parent document to the bates number of the last page of the last attachment "child" document |
| Page Count | Total number of pages in the document |
| Attachment Count | Indicates the number of attachments to the parent document |
| Custodian | Natural person, group, department, entity, *etc.* in whose possession the document was found Custodian names, including those listed within the "Additional Custodian" field, should be uniform and unambiguous per Custodian. |
| Additional Custodian | Other natural person(s), group(s), department(s), entity(ies), *etc.* in whose possession the document was found if duplicate versions of the document are not produced |
| File Size | Size in kilobytes (KB) of the document |
| NativeLink | Relative file path to each native document in the production (This field will be produced with all native ESI). |
| TextPath | The relative path to the corresponding OCR or extracted text file included with a production volume |
| Hash Value | MD5 or SHA-1 Hash value, unique document identifier |
| Confidential | "Confidential" to indicate that the document has been designated Confidential. "Highly Confidential" to indicate that the document has been designated Highly Confidential. Otherwise, this field should be null. |
| Redacted | Yes or No indication of whether the document at issue is redacted. |

| Field | Description |
|---|---|
| Author | Author field extracted from the metadata of the native file |
| From | Email sender |
| Agent ID | If the item was created by someone on behalf of the email account owner, ID of the agent who created/sent the item |
| To | Person to whom an email is addressed |
| CC | Recipient(s) of "carbon copies" of the email message |
| BCC | Recipient(s) of "blind carbon copies" of the email message |
| Subject | Subject field extracted from the metadata of the native file |
| Date Sent | Date the email message was sent (produced in MM/DD/YYYY format) |
| Time Sent | Time the email message was sent (produced in HH:MM AM/PM) |
| Importance | For emails, "High," "Low," or "Normal" (or equivalent if an email client other than Outlook was used); Null if no value selected |
| Sensitivity | For Outlook (or equivalent) emails, "Normal," "Private," "Personal," or "Confidential"; Null if no value selected |
| Follow Up Flag | System data; Null if no status |
| Read Status | Read or Unread |
| Has Attachments | Indicates that an email has attachments |
| Email Folder Path | The original email folder |
| File Type | Email, attachment, individual file, paper, *etc*. |
| File Extension | File extension of document (.msg, .doc, .xls, *etc*.) |
| File Name | Name of original file |
| Original Path | The original file path for non-email ESI |

| **Field** | **Description** |
|---|---|
| Title | Title of a non-email document (Microsoft Title field) |
| Date Created | For non-emails (produced in MM/DD/YYYY format) |
| Time Created | For non-emails (produced in HH:MM AM/PM format) |
| Date Last Modified | For non-emails (produced in MM/DD/YYYY format) |
| Time Last Modified | For non-emails (produced in HH:MM AM/PM format) |
| Date Last Accessed | For non-emails (produced in MM/DD/YYY format) |
| Time Last Accessed | For non-emails (produced as HH:MM AM/PM) |
| Last Modified By | Person who last modified a document |
| Track Changes | "Yes" to indicate that the document includes tracked changes. Otherwise, this field should be null. |