**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BROOKE RYAN, *individually and on behalf of all others similarly situated,* | Case No. 20-cv-02164-JMG |
| Plaintiff, | CLASS ACTION |
| v. | |
| TEMPLE UNIVERSITY, | |
| Defendant. | |
| CHRISTINA FUSCA, *individually and on behalf of all others similarly situated,* | Case No. 20-cv-03434-JMG |
| Plaintiff, | CLASS ACTION |
| v. | |
| TEMPLE UNIVERSITY, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................2

TERMS OF THE PROPOSED SETTLEMENT AGREEMENT ..................................4

    I.      THE PROPOSED SETTLEMENT CLASS .......................................4

    II.     MONETARY TERMS.......................................................................5

    III.    NON-CASH BENEFITS ...................................................................6

    IV.    DISMISSAL AND RELEASE OF CLAIMS .....................................6

    V.     RESULTS OF SETTLEMENT ADMINISTRATION AND NOTICE .................7

ARGUMENT .............................................................................................................8

    I.      STANDARD FOR FINAL APPROVAL OF CLASS ACTION
          SETTLEMENTS.............................................................................8

         A.    The Law Favors and Encourages Settlements ............................8

         B.    The Settlement Must be Procedurally and Substantially Fair,
              Adequate, and Reasonable. ..........................................................9

    II.     THE PROPOSED SETTLEMENT IS PROCEDURALLY AND
          SUBSTANTIALLY FAIR, ADEQUATE, AND REASONABLE ...............11

         A.    The Settlement Satisfies the Requirements of Rule 23(e)(2)...................11

             1.    Plaintiffs and Class Counsel Have Adequately Represented
                   the Settlement Class....................................................11

             2.    The Proposed Settlement Was Negotiated at Arm's-Length. .........12

             3.    The Proposed Settlement Is Adequate in Light of the
                   Litigation Risks, Costs, and Delays of Trial and Appeal..............13

                 a.    The Risks of Establishing Liability....................................13

                 b.    The Risks of Establishing Damages at Trial.....................15

c. The Settlement Eliminates the Additional Costs and Delay of Continued Litigation. ...................................16

d. The Proposed Method for Distributing Relief Is Effective ........................................................................16

e. Class Counsel's Request for Attorneys' Fees Is Reasonable ......................................................................17

f. Class Counsel's Request for Attorneys' Fees Is Reasonable ......................................................................18

III. THE *GIRSH* FACTORS FAVOR SETTLEMENT ...............................................18

A. The Complexity, Expense, and Likely Duration of the Litigation ...........18

B. The Reaction of the Class to the Settlement. ...............................................19

C. The Stage of the Proceedings and the Amount of Discovery Completed ........................................................................19

D. The Risks of Establishing Liability and Damages and the Risks of Maintaining the Class Action through Trial. ........................................20

E. The Ability of Defendant to Withstand a Greater Judgment ...................21

F. The Range Is Reasonable in Light of Best Possible Recovery and All Attendant Risks of Litigation..........................................................22

IV. THE *PRUDENTIAL* FACTORS ARE SATISFIED..............................................22

A. Maturity of the Substantive Issues. ...........................................................22

B. The Existence and Probable Outcome of Claims by Other Classes and Subclasses ..........................................................................................23

C. The Comparison between the Results Achieved by the Settlement for Individual Class or Subclass Members and the Results Achieved or Likely to be Achieved for Other Claimants...........................................23

D. Whether Class or Subclass Members Are Accorded the Right to Opt-Out of the Settlement.....................................................................24

E. Whether Any Provisions for Attorneys' Fees Are Reasonable ................24

F.    Whether the Procedure for Processing Individual Claims under the Settlement Is Fair and Reasonable. ............................................25

V.    THE MANNER OF DISTRIBUTION OF THE AVAILABLE SETTLEMENT FUND IS FAIR AND ADEQUATE ...........................................25

VI.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT ............26

VII.    NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS. ...................................27

CONCLUSION ...................................................................................................................29

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................... 9

*Beck v. Manhattan Coll.*,
  2023 WL 4266015 (S.D.N.Y. June 29, 2023) ...................................... 20

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) ............................................................... 11

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ................................................................. 19

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining
  and Manufacturing Company)*,
  513 F. Supp. 2d 322 (E.D. Pa. 2007) .................................................. 25

*Craig v. Rite Aid Corp.*,
  2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ............................................. 13

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012) ............................................................... 11

*Eichenholtz v. Brennan*,
  52 F.3d 478 (3d Cir. 1995) ................................................................. 9

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ................................................... 1, 9, 10, 16

*In re Baby Prod. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ............................................................... 27

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................................... 19

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
  269 F.R.D. 468 (E.D. Pa. 2010) .................................................... 19, 28

*In re CertainTeed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) .......................................................... 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*,
  55 F.3d 768 (3d Cir. 1995) ......................................................... 9, 19, 22

*In re Linerboard Antitrust Litig.*,
   321 F. Supp. 2d 619 (E.D. Pa. 2004) .................................................................. 21

*In re N.J. Tax Sales Certificate Antitrust Litig.*,
   750 F. App'x 73 (3d Cir. 2018) ......................................................................... 10

*In re Nat. Football League Players' Concussion Inj. Litig.*,
   307 F.R.D. 351 (E.D. Pa. 2015) ........................................................................ 20

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016) ............................................................. 12, 20, 21, 27

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) ............................................................................. 10

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ......................................................................Passim

*In re Ravisent Techs., Inc. Sec. Litig.*,
   2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ......................................................... 17

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
   2024 WL 815503 (E.D. Pa. Feb. 27, 2024) .............................................. 22, 24, 25

*In re Suffolk Univ. Covid Refund Litig.*,
   2022 WL 6819485 (D. Mass. Oct. 11, 2022) ....................................................... 20

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) .................................................................... 14

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ......................................................................Passim

*Lazy Oil Co. v. Witco Corp.*,
   166 F.3d 581 (3d Cir. 1999) ............................................................................... 9

*Omori v. Brandeis Univ.*,
   673 F. Supp. 3d 21 (D. Mass. 2023) ................................................................... 13

*Ripley v. Sunoco, Inc.*,
   287 F.R.D. 300 (E.D. Pa. 2012) ......................................................................... 11

*Serrano v. Sterling Testing Sys., Inc.*,
   711 F. Supp 2.d 402 (E.D. Pa. 2010) .................................................................. 19

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ........................................................................ 18

*Tumpa v. IOC-PA, LLC*,
  2021 WL 62144 (W.D. Pa. Jan. 7, 2021) ..................................................... 19

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
  726 F.2d 956 (3d Cir. 1983) ........................................................................ 18

*Wright v. S. New Hampshire Univ.*,
  2021 WL 1617145 (D.N.H. Apr. 26, 2021) ................................................. 28

*Zenith Labs., Inc. v. Carter–Wallace, Inc.*,
  530 F.2d 508 (3d Cir. 1976) ........................................................................ 20

**Rules**

Fed. R. Civ. P. 23 .......................................................................... 11, 27, 28

Fed. R. Civ. P. 23(a) .................................................................... 9, 15, 27

Fed. R. Civ. P. 23(b) ................................................................................ 9

Fed. R. Civ. P. 23(b)(3) ..................................................................... 15, 27

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................... 27

Fed. R. Civ. P. 23(e) ................................................................... 1, 2, 9, 27

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................... 27

Fed. R. Civ. P. 23(e)(2) ............................................................. 1, 9, 11, 18

Fed. R. Civ. P. 23(e)(2)(A) .................................................................. 11, 12

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................... 13, 16

Fed. R. Civ. P. 23(e)(2)(C)(ii) .................................................................. 16

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................. 17

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................... 18

Fed. R. Civ. P. 23(e)(3) ............................................................................. 9

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Named Plaintiffs Brooke Ryan and Christina Fusca ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the settlement reached in this Action, and for approval of the manner of distribution of the Available Settlement Fund (the "Distribution"). The terms of the settlement are set forth in the Class Action Settlement Agreement dated September 20, 2024 (the "Settlement Agreement," "SA," or "Agreement"). ECF 61-3, Exh. 1.[1]

## INTRODUCTION

Plaintiffs, on behalf of themselves and a proposed class of individuals, have agreed to settle all claims against Defendant Temple University – Of The Commonwealth System of Higher Education ("Temple," the "University," or "Defendant") as to tuition and fees paid during the Spring 2020 semester.  Plaintiffs alleged that Temple contracted with, charged, and collected from its students funds for in-person education and on-campus access and services, but that Temple failed to deliver an in-person education and on-campus access and services when, in response to the COVID-19 pandemic, Temple transitioned to an online-only environment. Plaintiffs alleged that Temple was liable for breach of implied contract or, in the alternative, unjust enrichment. Temple denies those allegations.

The Agreement represents a fair, reasonable, and adequate result for the Settlement Class and thus satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Third Circuit decisions of *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975) and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998). When compared to similar settlements in the COVID-19 tuition refund context, the Agreement here provides above-average

---

[1] The capitalized terms in this memorandum shall be construed according to their meaning as defined in the Settlement Agreement, except as may otherwise be indicated.

benefits when taking into consideration the monetary and non-monetary benefits. *See infra* section IV(C). The Agreement is especially beneficial to the Settlement Class considering the substantial litigation risks Plaintiffs face. Plaintiffs and Class Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the settlement as they had conducted significant factual investigation into the merits of the claims, engaged in protracted settlement negotiations, including two mediation sessions with Hon. Diane M. Welsh (Ret.) of JAMS, and exchanged detailed enrollment and financial information with Defendant as part of the mediation process. *See* Declaration of Gary F. Lynch (ECF 61-2) ("Lynch Decl.") ¶¶ 5-7.

Given the risks of proceeding with litigation and that the Agreement achieved a satisfactory resolution relative to the damages sustained, the $6,900,000.00 Settlement Fund, Non-Cash Benefit, and proposed Distribution are fair, reasonable, and adequate in all aspects. Accordingly, Plaintiffs respectfully request the Court grant final approval of the Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On May 5, 2020, Plaintiff Brooke Ryan brought suit against Temple University in the United States District Court for the Eastern District of Pennsylvania, Case No. 5:20-cv-02164-JMG. *See* ECF No. 1. On July 14, 2020, Plaintiff Christina Fusca brought suit against Temple University in the United States District Court for the Eastern District of Pennsylvania, Case No. 2:20-cv-03434-JMG. On their own behalf, and on behalf of a putative class, Plaintiffs asserted claims for breach of implied contract and unjust enrichment.

On August 12, 2020, Plaintiff Ryan filed her Motion to Consolidate Cases and Appoint Interim Counsel. ECF No 13. The motion was granted, and, on September 4, 2020, Named Plaintiffs filed a Consolidated Second Amended Class Action Complaint. ECF No. 15. On October

5, 2020, Temple filed its motion to dismiss the Consolidated Second Amended Class Action Complaint. ECF No. 16. Named Plaintiffs filed their opposition brief to this motion to dismiss on November 4, 2020. ECF No. 17. Temple filed a reply in support of its motion to dismiss on November 19, 2020. ECF No. 19. On April 22, 2021, the Court granted Defendant's motion to dismiss. ECF Nos. 37–38.

Named Plaintiffs filed their notice of appeal to the Third Circuit on May 24, 2021. ECF No. 39. *Ryan v. Temple University*, No. 21-2016 (3d Cir.). Named Plaintiffs filed their Opening Brief and Joint Appendix on November 19, 2021. ECF Nos. 31, 32. Temple filed its Response on January 18, 2022. ECF No. 38. Named Plaintiffs filed their Reply Brief on February 22, 2022. ECF No. 51. Oral argument was held on January 25, 2023. The Third Circuit affirmed in part, reversed in part, and remanded for further proceedings on August 11, 2023, and subsequently issued an Amended Opinion on September 6, 2023. ECF Nos. 71, 76. After the remand, Temple filed its Answer and Affirmative Defenses in this Court on October 4, 2023. ECF No. 48.

While the appeal was pending, on April 26, 2023, the Parties held a mediation with Hon. Diane M. Welsh (Ret.), which was unsuccessful. While no agreement was reached that day, the Parties remained in contact with one another and continued to engage in settlement discussions.

On February 23, 2024, the Parties held a second mediation session and reached an agreement in principle on a class-wide basis. The settlement negotiations were hard-fought and at arm's-length under the supervision and oversight of Judge Welsh. Over the ensuing months, the Parties negotiated the final terms of the Settlement and its supporting exhibits.

Based upon their independent analysis, and recognizing the risks of continued litigation, Class Counsel believe that the proposed settlement is fair, reasonable, and in the best interest of Plaintiffs and the Settlement Class. Although Temple denies liability, Temple decided to enter into

this Settlement on the terms and conditions stated herein to avoid further expense, inconvenience, and burden, and the uncertainty and risks of litigation. For those reasons, and because the Settlement is contingent on Court approval, the Parties submit their Settlement Agreement to the Court for its review.

## **TERMS OF THE PROPOSED SETTLEMENT AGREEMENT**

## I.    **THE PROPOSED SETTLEMENT CLASS**

The proposed Settlement Class that received preliminary certification for settlement purposes is defined as:

> All Temple undergraduate, graduate, and professional students who paid their tuition and/or University Services Fee obligations from any source for the Spring 2020 Semester, enrolled in at least one in-person, on-campus class during the Spring 2020 Semester, and remained enrolled after March 16, 2020.

ECF No. 62, ¶ 6. Excluded from the Settlement Class are (1) any person who withdrew from Temple on or before March 16, 2020; (2) any person who was enrolled solely in a class or classes that were originally intended to be taught in an online format in the Spring 2020 Semester even before the COVID-19 pandemic; (3) any person who received a full scholarship/grants from Temple or otherwise was not obligated to make contributions, payments or third-party arrangements towards tuition or fees for the Spring 2020 Semester; (4) any Judge or Magistrate Judge presiding over these Actions and members of their families; (5) any person who properly executes and files a timely request for exclusion from the Settlement Class; and (6) the legal representatives, successors, or assigns of any such excluded persons. *Id*. Out of a Settlement Class of more than 32,000 students, there have been no Settlement Class Members who have objected or excluded themselves from the Settlement Agreement. *See* Declaration of Mark Cowen, A.B. Data, Ltd. ("A.B. Data") ("Cowen Decl.") ¶¶ 17-18.

## II.    MONETARY TERMS

The proposed Settlement Fund is a non-reversionary cash payment of six million nine hundred thousand U.S. Dollars ($6,900,000.00). *See* SA ¶ 2.1. In accordance with the Settlement Agreement, the Settlement Administrator shall make deductions from the Settlement Fund for court-approved attorneys' fees and reasonable litigation costs, fees and expenses for the Settlement Administrator, and any court-approved incentive awards to the Plaintiffs, in recognition of the risks and benefits of their participation and substantial services they performed. *Id.* at ¶¶ 8.2–8.3. After all applicable fees, expenses and awards are deducted, the Available Settlement Fund will be distributed *pro rata* to each Settlement Class Member pursuant to the Settlement Agreement. *Id.* at ¶ 2.2(c).

Following the Court's Preliminary Approval Order, Temple paid $50,000 into an Escrow Account with the Settlement Administrator. *See* SA ¶ 2.2(a). Within thirty (30) days after the Effective Date, Temple shall deposit into the escrow account the balance of its obligation to pay six million nine hundred thousand dollars ($6,900,000.00), after crediting Temple's previous escrow payment. *Id.* at ¶ 2.2(b). Within sixty (60) days after the Effective Date, the Settlement Administrator will send Settlement Class Members their Cash Award by check. *Id.* at ¶ 2.2(d). The Settlement Administrator will pay all legally mandated Taxes prior to distributing the settlement payments to Settlement Class Members. *Id.* at ¶ 5.4.

Settlement Class Members shall have one hundred eighty (180) days from the date of issuance of the checks to cash their check for the Cash Award. After all checks issued by the Settlement Administrator have been redeemed, returned as undeliverable, or expired by passage of one hundred eighty (180) days without deposit, the funds attributable to Uncashed Settlement Checks shall, subject to Court approval, be paid as a *cy pres* to Temple's General Scholarship Fund. *See* SA ¶ 2.2(e).

## III.    NON-CASH BENEFITS

In addition to the Cash Award, each Settlement Class Member had the option to elect to receive a Non-Cash Benefit using the Election Form on the Settlement website no later than forty-five (45) days after the Notice Date. SA ¶ 1.10. Specifically, through the Election Form process, a Settlement Class Member could have elected to receive *one* of the following Non-Cash Benefits, which are non-transferable: (i) one Temple University home football season ticket (seat location to be determined at Temple's discretion) for the two consecutive seasons following the Effective Date; or (ii) one Alumni Recreation Access pass, which will be issued to Settlement Class Members who elect this option in a reasonable amount of time after the Effective Date, and last for approximately two consecutive years; or (iii) one course offered through Temple's Office of Non-Credit and Continuing Education, which must be redeemed within one year of the Effective Date. The course number must start with ONCE. Online, self-paced courses offered in partnership with LERN/UGotClass, ed2go and ETC are excluded from this Non-Cash Benefit. SA ¶ 1.18.

## IV.    DISMISSAL AND RELEASE OF CLAIMS

As of the Effective Date, Settlement Class Members shall be deemed to have forever released any and all actions, causes of action, suits, claims, lawsuits, liabilities, liens, demands, judgments, costs, damages, expenses, obligations, and all other legal responsibilities in any form or nature, including, but not limited to, all claims relating to or arising out of any state, local, or federal statute, ordinance, regulation, law or any other claim at common law or in equity, whether past, present, or future, known or unknown, asserted or unasserted, arising out of or in any way allegedly related to Temple tuition, fees, or costs paid or incurred by or on behalf of any Settlement Class Member in connection with, relating to, or concerning the transition to remote online learning or transition to providing services or activities remotely, and the closure of Temple's

campus due to the COVID-19 pandemic during the Spring 2020 Semester. This includes but is not limited to all claims that were brought or could have been brought in the Action, whether class or individual in nature. SA ¶¶ 1.24, 3.1.

## V.    RESULTS OF SETTLEMENT ADMINISTRATION AND NOTICE

Following the Court's Preliminary Approval Order, the Settlement Administrator completed the Notice plan set forth in the Settlement. *See generally* Cowen Decl. The Notice plan was designed to reach as many Settlement Class Members as practicable. The Notice included the required description of the material Settlement terms; the deadline for Settlement Class Members to opt-out of the Settlement Class; the deadline for Settlement Class Members to object to the Settlement; and the Settlement Website from which Settlement Class Members could access the Long Form Notice, Settlement Agreement, and other related documents and information. Cowen Decl., Exs. B-C.

Pursuant to the Court's Preliminary Approval Order, Temple provided A.B. Data with the Class List containing information sufficient to provide Settlement Class Members with direct notice. The Settlement Class List contained information for 32,101 Settlement Class Members. Cowen Decl. ¶ 6. A.B. Data then conducted an email address validation exercise to update addresses and remove duplicates, helping to ensure the overall deliverability of the Notice. Cowen Decl. ¶ 7. Thereafter, on November 12, 2024, A.B. Data sent the Email Notice to 38,314 distinct and valid email addresses. Cowen Decl. ¶ 8. Of those 38,314 unique email addresses, 35,171 (or 91.8%) were delivered. *Id.* On November 21, 2024, A.B. Data received a supplemental data file from Temple containing 46 additional Settlement Class Members, with 56 unique email addresses. *Id.* ¶ 9. On December 6, 2024, a supplemental email notice was sent to all 56 unique email addresses, with 55 confirmed as delivered. *Id.* 10. A.B. Data was contacted by an additional Settlement Class Member who did not receive notice; A.B. Data sent Email Notice to that

Settlement Class Member on December 20, 2024. *Id.* ¶ 11.  There was a total of 2,752 Settlement

Class Members who did not have an email address available, or the email address was invalid. *Id.*

¶ 12. Those 2,752 Settlement Class Members were mailed a Short Form Notice on November 12,

2024. *Id.* ¶ 12; Ex. C. An additional 3,080 Short Form Notices were mailed on November 27, 2024

for Settlement Class Members whose email Notice was not delivered. *Id.* ¶ 13. Of the 5,832 Short

Form Notices mailed, only 130 were returned as undeliverable. *Id.* ¶ 14.

Further, on November 12, 2024, A.B. Data established an informational Settlement

Website, www.templecovidsettlement.com, allowing Settlement Class Members to obtain detailed

information about the Action, the Settlement, and to review important documents, including the

Long Form Notice, Settlement Agreement, and other relevant documents. Cowen Decl. ¶ 16. A.B.

Data also established a case-specific toll-free telephone number (1-877-252-4685) which provided

summary information to frequently asked questions, and the opportunity to speak with a live

service representative. *Id.* ¶ 15.

As a result of the Notice plan, approximately 99.6% of the identifiable Settlement Class

Members received direct notice of the Settlement. The deadline to submit an objection to or opt

out of the Settlement occurred on January 13, 2025. No Settlement Class Member has objected to

the Settlement, and no Settlement Class Member has submitted a request for exclusion. Cowen

Decl. ¶¶ 17-18.

<u>**ARGUMENT**</u>

I.      **STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS.**

**A.  The Law Favors and Encourages Settlements.**

"[T]here is an overriding public interest in settling class action litigation, and it should

therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

Additionally, "[t]he law favors settlement particularly in class actions and other complex cases

where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995). But, the final approval of settlement is left to the discretion of the court. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). Courts in this Circuit have great discretion in such matters: "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh*, 521 F.2d at 156; *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999). In order to grant final approval of a class action settlement, the Court must first determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### B. The Settlement Must be Procedurally and Substantially Fair, Adequate, and Reasonable.

Federal Rule of Civil Procedure 23(e) provides the applicable standard for judicial approval of a class action settlement. Rule 23(e)(2), as amended, provides that courts should consider certain factors when determining whether a class action settlement is "fair, reasonable and adequate" such that final approval is warranted:

> (A)  whether the class representatives and class counsel have adequately represented the class;
> (B)  whether the proposal was negotiated at arm's-length;
> (C)  whether the relief provided for the class is adequate, taking into account:
>> (i)  the costs, risks and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)  the terms of the proposed award of attorneys' fees, including timing of payment; and
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D)  whether the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2).

In addition to the foregoing factors, the Third Circuit considers additional factors, the first set of which comes from *Girsh*, 521 F.2d at 156:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendant to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* Importantly, no single *Girsh* factor is dispositive. The Third Circuit has explained: "a court may approve a settlement even if it does not find that each of [the *Girsh*] factors weigh in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018).

In addition to the *Girsh* factors, the Third Circuit, in *In re Prudential*, 148 F.3d at 324, elaborated on additional factors that reviewing courts should consider when deciding whether to approve a proposed class action settlement. These factors were then clarified in *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). These *Prudential* factors overlap with the *Girsh* factors and are also non-exclusive. But, importantly, only the factors relevant to the litigation need to be addressed. *In re Prudential*, 148 F.3d at 323–24. The *Prudential* factors are:

(1)     the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

(2)     the existence and probable outcome of claims by other classes and subclasses;

(3)     the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;

(4)     whether class or subclass members are accorded the right to opt-out of the settlement;

(5)     whether any provisions for attorneys' fees are reasonable; and

(6)     whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* As discussed in more detail below, the proposed Settlement satisfies the requirements of Rule 23, the *Girsh* factors, and the relevant *Prudential* factors, and should be granted final approval.

## II. THE PROPOSED SETTLEMENT IS PROCEDURALLY AND SUBSTANTIALLY FAIR, ADEQUATE, AND REASONABLE.

### A. The Settlement Satisfies the Requirements of Rule 23(e)(2).

#### 1. Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class.

When analyzing whether a proposed class action settlement is fair, reasonable, and adequate, the Court must consider whether "the class representative[] and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "The adequacy requirement encompasses two distinct inquiries designed to protect the interests of absentee class members: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012). This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted). Here, both prongs of the adequacy test are met. First, Plaintiffs' interests are aligned with those of the Settlement Class as they were all undergraduate, graduate, and professional students who attended Temple during the Spring 2020 semester and enrolled in in-person classes. Second, Class Counsel are highly experienced in class action litigation, especially in the tuition refund context. Class Counsel's qualifications are set forth in the Declaration of Gary F. Lynch (ECF No. 61-2), and the Firm Resumes of Lynch Carpenter, LLP (ECF 61-4, Ex. 2) and Poulin | Willey | Anastopoulo (ECF 61-5, Ex. 3) submitted in support of preliminary approval.

Additionally, Plaintiffs and Class Counsel have adequately represented the Settlement Class by zealously prosecuting this Action, including by, among other things, extensive investigation and other litigation efforts throughout the prosecution of the Action, including, *inter alia*: (1) researching, drafting, and consolidating the initial complaints in the Actions; (2) researching the applicable law with respect to the claims in the Action and the potential defenses thereto; (3) opposing the motion to dismiss; (4) successfully appealing the Court's dismissal to the Third Circuit; (5) consulting with potential expert witnesses; (6) engaging in extensive settlement discussions with Defendant's counsel through two mediations; (7) exchanging information during informal and formal discovery and extensively reviewing said discovery; and (8) working with Temple to draft the comprehensive Settlement Agreement and its exhibits, including the notice plan, and drafting the motions and briefs necessary to obtain approval. *See* Lynch Decl. (ECF 64-2) at ¶¶ 5-7.  Through each step of the Action, Plaintiffs and Class Counsel have strenuously advocated for the best interests of the Settlement Class. Plaintiffs and Class Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

## 2.    The Proposed Settlement Was Negotiated at Arm's-Length.

The proposed Settlement satisfies Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the Parties' counsel overseen by an experienced mediator, Hon. Diane M. Welsh (Ret.). Lynch Decl. (ECF 61-2) ¶ 7. Further, it is well settled that in the Third Circuit class action settlements enjoy a presumption of fairness under review when: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016), *as amended* (May 2, 2016). Given the above, Rule 23(e)(2)(B) is satisfied.

3.      **The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal.**

Rule 23(e)(2)(C)(i) and both sets of factors described above overlap as they address the risks posed by continuing litigation. In fact, the first *Girsh* factor is directly analogous to Rule 23(e)(2)(C)(i). As further explained below, all these factors (to the extent relevant) weigh in favor of final approval of the Settlement.

a.      **The Risks of Establishing Liability.**

In considering the risks of establishing liability, courts often consider the complexity of the issues and magnitude of the proposed settlement class. *In re Prudential*, 148 F.3d at 318. Here, if litigation continues, Plaintiffs and Settlement Class Members would need to overcome a number of issues, including obtaining class certification, briefing motions for summary judgment, defending expert opinions, and maintaining certification through trial. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013) (preliminarily approving settlement where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources."). Although Class Counsel are confident in their ability to overcome these challenges, they create risks for the Settlement Class that must be weighed against value of any potential recovery.

It is likely that Temple would have contested whether Plaintiffs could ultimately certify a class, *e.g.*, *Omori v. Brandeis Univ.*, 673 F. Supp. 3d 21, 29 (D. Mass. 2023) (denying student's motion for class certification as to tuition and fees). This sort of contest between the parties would

become complicated and lengthy, given the current stage of litigation. Additionally, whether Plaintiffs and the Class would obtain any recovery from trial would be subject to a jury's verdict and likely appeal from the losing party. Considering the scenarios, the risks of continuing this litigation are very substantial, even assuming favorable facts in Plaintiffs' favor.

There are several risks in this case that could pose obstacles to achieving a favorable outcome for Plaintiffs and the Settlement Class. Temple succeeded in its initial motion to dismiss the action. Plaintiffs appealed the dismissal, leading the Third Circuit to affirm in part, reverse in part, and remand the case for further proceedings. If not for the Settlement, Plaintiffs would be faced with the task of extensive and contentious motion practice including moving for class certification and/or opposing Temple's motion for summary judgment. While Plaintiffs believe they would have prevailed, Plaintiffs acknowledge there are risks involved in this litigation—a relatively new area of law—including proving the existence of an implied contract, or that Temple has been unjustly enriched. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval). Given that the case law is still developing, there is uncertainty whether Plaintiffs would likely prevail on the merits had the case gone to trial.

Moreover, the uncertainty of the outcome of disputes regarding responsibility for university closures is very apparent given the governmental orders for class cancellation and campus closure. Temple likely would have filed a motion for summary judgment in which it would argue among other things that: (1) the descriptions of the fees at issue cannot support a contract claim; (2) there was never a promise to provide in-person education in exchange for tuition; (3) it was impossible to perform under Covid-19 governmental orders; and (4) Plaintiffs and members

14

of the Class still received education and obtained credits. Temple would also likely file a comprehensive opposition to class certification in which it would argue that Plaintiffs would not be able to show a material class-wide breach or unjust enrichment. Temple would also argue among other things that: (1) Plaintiffs could not satisfy Rule 23(a)'s typicality requirement for several reasons; (2) Plaintiffs' proposed Rule 23(b)(3) class was not ascertainable; (3) Plaintiffs could not show causation or the existence or terms of a contract on class-wide bases; and (4) that class litigation was not superior to individual litigation. While Plaintiffs do not concede the validity of any of Temple's arguments, Plaintiffs acknowledge that Temple could raise legitimate arguments at both summary judgment and class certification as demonstrated by the cases above.

In light of the risks discussed above, the Settlement as it stands currently is an excellent result for the Settlement Class as it provides above-average benefits. *See infra* section IV(C).

### b. The Risks of Establishing Damages at Trial.

The risks of establishing liability apply with equal force to the risks of establishing damages. If this litigation were to continue, Plaintiffs would rely heavily on expert testimony to establish damages, likely leading to a battle of the experts at trial and a *Daubert* challenge. If the Court were to determine that one or more of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become much more difficult to prove. Moreover, while Defendant did shift to distance learning and requested that most students leave campus, these steps were due to Covid-19 and the accompanying government orders, providing Temple with an impossibility defense. Plaintiffs have never disputed the necessity of these actions; the issue is whether Plaintiffs and the Settlement Class were entitled to a refund of tuition and fees paid to Temple, and a potential impossibility defense raises a risk of establishing damages and the form of such damages (*i.e.*, compensatory or restitution). Thus, in light of the significant risks Plaintiffs faced at the time of the settlement with regard to establishing damages, including the possibility that Plaintiffs would

not be able to establish damages for each student, this factor weighs heavily in favor of final approval.

### c.    The Settlement Eliminates the Additional Costs and Delay of Continued Litigation.

The anticipated complexity, cost, and duration of the Action would be considerable, and these factors are critical in a Court's evaluation of proposed settlements. *See Girsh*, 521 F.2d at 157 (holding that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement). Indeed, if not for the Settlement, litigation would continue, and there is a high likelihood it will be expensive, protracted, and contentious litigation. As stated previously, this would consume significant funds and expose Plaintiffs and the Settlement Class to many risks and uncertainties. The preparation for what would likely be a multi-week trial and possibly appeals would cause the Action to persist for likely several more years before the Settlement Class could possibly receive any recovery. Such a lengthy and highly uncertain process would not serve the best interests of the Settlement Class when compared to the immediate and certain monetary and non-monetary benefits of the Settlement. Accordingly, this Rule 23(e)(2)(C)(i) factor, as well as the analogous *Girsh* factors, all weigh in favor of final approval.

### d.    The Proposed Method for Distributing Relief Is Effective.

With respect to Rule 23(e)(2)(C)(ii), Plaintiffs and Class Counsel have taken appropriate steps to ensure that the Settlement Class is notified about the Settlement and that the Settlement benefits are properly distributed.

After all applicable fees, expenses and awards are deducted, the Available Settlement Fund will be distributed *pro rata* to each Settlement Class Member pursuant to paragraph 2.2(c) of the Settlement Agreement. Each Settlement Class Member's Cash Award will be distributed to that

Settlement Class Member automatically, with no action required by that Settlement Class Member. SA ¶ 2.2(c).

By default, the Settlement Administrator will send the Cash Award to each Settlement Class Member by check mailed to the Settlement Class Member's last known mailing address on file with the University Registrar. The Settlement Administrator has also provided a form on the Settlement Website that the Settlement Class Members may visit to provide an updated address for sending a check, or to elect to receive payment via Venmo or PayPal. SA ¶ 2.2(c). Funds for Uncashed Settlement Checks shall, subject to Court approval, be paid to Temple's General Scholarship Fund. SA ¶ 2.2(e).

### e.    Class Counsel's Request for Attorneys' Fees Is Reasonable.

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Consistent with the fee request plainly documented in the Notice, and as discussed in Class Counsel's fee memorandum, Class Counsel seek an award of attorneys' fees in the amount of thirty-three and one-third percent (33.33%) of the Settlement Fund and expenses to be paid from the Settlement Fund. Such amounts are presumptively reasonable and in line with requests frequently approved in this circuit. For example, in *In re Ravisent Techs., Inc. Sec. Litig.*, Judge Surrick noted that "courts within [the Third] Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." No. CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) (citing *In re CareSciences. Inc. Sec. Litig.*, Civ. A. No. 01–5266 (E.D. Pa. Oct. 29, 2004)) (awarding one-third recovery of $3.3 million settlement fund, plus expenses).

**f.    The Settlement Ensures Settlement Class Members Are Treated Equitably.**

Rule 23(e)(2)(D), the final factor, considers whether class members are treated equitably. As reflected in the Settlement Agreement, the proposed Settlement treats Settlement Class Members equitably relative to each other as all Settlement Class Members will receive a *pro rata* Cash Award, and each Settlement Class Member had the option to elect to receive a Non-Cash Benefit. This approach clearly satisfies the fair and equitable treatment requirement. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)).

Based on the foregoing, Plaintiffs and Class Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the settlement.

## III.    THE *GIRSH* FACTORS FAVOR SETTLEMENT.

### A.  The Complexity, Expense, and Likely Duration of the Litigation.

The first *Girsh* factor is satisfied. As discussed above, this Action raises complex factual and legal questions regarding the alleged non-deliverance of in-person education and services supported by the tuition and fees at issue. The matter at hand has had a thorough preliminary investigation and discovery and lengthy, hard-fought negotiations. The continued prosecution of these claims will require significant additional expenses to the class, including but not limited to further discovery and experts. Further, no matter the outcome at the district court level, the result will likely be appealed again, leading to further costs and delay any realized recovery. Thus, this settlement would avoid a myriad of unnecessary expenditures related to said further litigation. This avoidance benefits all parties while providing the Settlement Class with immediate benefits, and,

thus, weighs in favor of approving settlement. *In re Gen. Motors*, 55 F.3d at 812 (holding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

### B.  The Reaction of the Class to the Settlement.

The second *Girsh* factor to consider is the reaction of the class to the settlement. To determine such a reaction, the number of objectors to the settlements is often evaluated. *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234–35 (3d Cir. 2001)). Further, silence "constitutes tacit consent to the agreement." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993). Finally, a low number of objectors or opt-outs is persuasive evidence that the proposed settlement is fair and adequate. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp 2.d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234–35).

This factor is satisfied as there have been zero opt-outs and no objections among class members, after being given notice of such settlement. *See* Cowen Decl. ¶¶ 17-18.

### C.  The Stage of the Proceedings and the Amount of Discovery Completed.

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement." *In re Cendant*, 264 F.3d at 235. In assessing this third factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *See In re Warfarin*, 391 F.3d at 537. This does not require the parties to complete discovery. *See Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7, 2021) (approving a settlement where the "limited discovery" was sufficient to provide the parties "with an appreciation of the merits of the case"). While the parties did not engage in extensive formal discovery, the informal discovery produced via the mediation process, review of publicly available financial

statements, along with the help of neutral Hon. Diane M. Welsh (Ret.) provided the information

Class Counsel needed to objectively evaluate the strengths and weaknesses of Plaintiffs' and

Settlement Class Members' claims. Lynch Decl. (ECF 61-2) ¶¶ 5-7.  At its current stage, the

litigation is ripe for settlement, and, thus, this factor favors final approval.

### D.  The Risks of Establishing Liability and Damages and the Risks of Maintaining the Class Action through Trial.

The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance

the likelihood of success and the potential damage award if the case were taken to trial against the

benefits of an immediate settlement." *In re NFL*, 821 F.3d at 439 (citing *In re Prudential*, 148 F.3d

at 319).[2] While Plaintiffs and Class Counsel strongly believe in the merits of the case, they

acknowledge the substantial risks they face at summary judgment and at class certification. *See*

*Beck v. Manhattan Coll.*, No. 20 CIV. 3229 (LLS), 2023 WL 4266015, at *3 (S.D.N.Y. June 29,

2023), *appeal withdrawn*, No. 23-1049, 2023 WL 9233971 (2d Cir. Oct. 30, 2023) (granting

summary judgment on tuition and fee claims in favor of college); *In re Suffolk Univ. Covid Refund*

*Litig.*, No. CV 20-10985-WGY, 2022 WL 6819485, at *4 (D. Mass. Oct. 11, 2022) (denying

student motion for class certification). While Plaintiffs and Class Counsel are confident they could

overcome any summary judgment motion Temple could bring and are also confident they could

certify a class, Plaintiffs' success is far from certain. Through the Settlement, Plaintiffs and

---

[2] The risks of maintaining the class action through "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin,* 391 F.3d at 537. "Because class certification is subject to review and modification at any time during the litigation, the uncertainty of maintaining class certification favors settlement," but warrants only minimal consideration. *In re Nat. Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) (citing *Zenith Labs., Inc. v. Carter–Wallace, Inc.,* 530 F.2d 508, 512 (3d Cir. 1976)).

Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. As such, these factors weigh in favor of final approval.

### E. The Ability of Defendant to Withstand a Greater Judgment.

The Seventh *Girsh* factor considers "whether the defendant[s] could withstand a judgment for an amount significantly greater than the settlement." *In re Warfarin,* 391 F.3d at 537–38. This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL*, 821 F.3d at 440. During the pendency of this litigation, Temple's leadership has publicly commented on the University's financial challenges in recent years, exacerbated by factors such as declining enrollment, the COVID-19 pandemic, "and the multiple years of flat state funding."[3] In light of these challenges, although Temple may have the ability to withstand a somewhat greater judgment, there is a clear risk that, even were Plaintiffs to obtain a favorable class judgment for the full damages they requested, such a judgment could be beyond Temple's ability to pay without imperiling its operations and obligations to its employees and current student body. Therefore, the favorable result here—a $6,900,000.00 settlement with the option to elect to receive a Non-Cash Benefit—compared to the risks and expenses attendant to conducting this litigation and the immediacy of the benefit to Settlement Class Members, weigh strongly in favor of settlement. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004) ("[T]he settling defendant's ability to pay greater amounts [may be] outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial."). As such, this factor weighs in favor of final approval.

---

[3] *See* Temple University, *A primer on Temple's operating budget*, Oct. 30, 2023, *available at* https://news.temple.edu/news/2023-10-30/primer-temple-s-operating-budget.

**F. The Range Is Reasonable in Light of Best Possible Recovery and All Attendant Risks of Litigation.**

In evaluating the eighth and ninth *Girsh* factors, courts ask "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* As such, "[t]his inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re Gen. Motors*, 55 F.3d at 813. Given that Covid-19 litigation is an emerging area of law, the risk of continued litigation is significant, making the instant Settlement, which provides significant relief to the class now as opposed to years of litigation without the guarantee of recovery, even more reasonable.

**IV. THE *PRUDENTIAL* FACTORS ARE SATISFIED**

**A. Maturity of the Substantive Issues.**

"The first [*Prudential*] factor—maturity of the underlying substantive issues—substantially mirrors the third *Girsh* factor, the stage of the proceedings. Under this factor, the advanced development of the record weighs in favor of approval." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024). Here, given Class Counsel's knowledge of the applicable law in the tuition refund context, the substantive issues in this matter are quite mature. Due to the investigation and discussion throughout the litigation of this Action and the Parties' mediation before Hon. Diane M. Welsh (Ret.), both Parties are in a position to fully evaluate their own strengths and weaknesses. The stage of this Action lends itself in favor of final approval of the Settlement.

**B. The Existence and Probable Outcome of Claims by Other Classes and Subclasses.**

Since no class members have elected to be excluded, this factor weighs heavily in favor of approval. *See* Cowen Decl. ¶¶ 17-18.

**C. The Comparison between the Results Achieved by the Settlement for Individual Class or Subclass Members and the Results Achieved or Likely to be Achieved for Other Claimants**

This Settlement is fair and reasonable and provides Temple students with a favorable per student settlement value. Here, this Settlement's $215 gross per student value[4] is comparable to, if not better than, other tuition refund settlements that have been litigated for years. *See, e.g.*, *Staubus v. University of Minnesota et al.*, No. 27-cv-20-8546 (Minn. Dist. Ct.) ($3.25 million settlement with a per student recovery of approximately $60); *Pfeifer et al. v. Loyola University of Chicago*, No. 1:20-cv-03116 (N.D. Ill.) ($1.375 million settlement with a per student recovery of approximately $88 per student); *Espejo et al. v. Cornell University*, No. 3:20-cv-00467-MAD-ML (N.D.N.Y.) ($3 million settlement with a per student recovery of $115); *Rocchio et al. v. Rutgers, The State University of New Jersey*, No. MID-L-003039-20 (N.J. Super. Ct.) (approximately $77 per student); *Choi et al. v. Brown University*, No. 1:20-cv-00191 (D.R.I.) (approximately $155 per student); *Smith v. University of Pennsylvania*, No. 20-2086 (E.D. Pa.) (approximately $173 per student); *Levin v. Board of Regents of the University of Colorado*, No. 2020cv31409 (Colo. Dist. Ct., Denver Cnty.) (approximately $75 per student). In comparison, the approximately $215 settlement benefit here is greater than all of those settlements and does not include the additional Non-Cash Benefit of one of the following, which are nontransferable: (i) one Temple University home football season ticket (seat location to be determined at Temple's discretion) for the two

---

[4] Value based on the final Class List and supplemental Class List, which identified a total of 32,147 Settlement Class Members.

consecutive seasons following the Effective Date; or (ii) one Alumni Recreation Access pass, which will be issued to Settlement Class Members who elect this option in a reasonable amount of time after the Effective Date, and last for approximately two consecutive years; or (iii) one course offered through Temple's Office of Non-Credit and Continuing Education, which must be redeemed within one year of the Effective Date.

Given the risks of litigation, this value is fair and proportional. It is unlikely that Plaintiffs could bring these claims on their own, given the imbalance between the cost of litigation and the limited ability to recover damages. These claims also would be subject to the same defenses that are outlined above. As such, this *Prudential* factor weighs heavily in favor of final approval.

### D.  Whether Class or Subclass Members Are Accorded the Right to Opt-Out of the Settlement.

"Factor four considers whether class or subclass members are accorded the right to opt out of the settlement." *In re Suboxone*, 2024 WL 815503, at *10. Here, after the Court's Preliminary Approval Order, Notice was provided to the Settlement Class detailing the opt-out procedure and deadline. To date, zero class members have opted out. As such, this *Prudential* factor weighs in favor of final approval.

### E.  Whether Any Provisions for Attorneys' Fees Are Reasonable

As discussed above, the Settlement's provision for attorneys' fees is reasonable and within the range of attorneys' fee awards commonly awarded in this Circuit, and the Notice specifically advised Settlement Class Members of the attorneys' fees and expenses Class Counsel would request the Court to approve. As such, this *Prudential* factor weighs in favor of final approval.

### F. Whether the Procedure for Processing Individual Claims under the Settlement Is Fair and Reasonable.

Under the settlement scheme, the procedure for individual claims is reasonable. Each Settlement Class Member will automatically receive their settlement benefit without the need to take any action. Thus, this *Prudential* factor weighs in favor of final approval.

## V. THE MANNER OF DISTRIBUTION OF THE AVAILABLE SETTLEMENT FUND IS FAIR AND ADEQUATE.

The standard for approval of a proposed distribution of settlement funds to a class is the same as the standard for approving the settlement itself, *i.e.*, that the distribution plan is fair, reasonable, and adequate. *See In re Suboxone*, 2024 WL 815503, at *11. "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.* (citation omitted); *see also Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining and Manufacturing Company)*, 513 F. Supp. 2d 322, 335 (E.D. Pa. 2007) (approving as reasonable a distribution plan that allocated settlement funds to class members based upon their *pro rata* share of the class's total transparent tape purchases during the damage period, net of invoice adjustments and rebates paid as of the date of the settlement).

Plaintiffs and Class Counsel believe that the proposed manner of distribution is fair and reasonable and respectfully submit that it should be approved by the Court. Indeed, as noted above, the manner of distribution treats the Settlement Class equitably; each Settlement Class Member will automatically receive their *pro rata* Cash Award pursuant to paragraph 2.2(c) of the Settlement Agreement, without the need to take any action. Notably, there have been no objections to the distribution proposal to date, which supports approval of the distribution plan.

## VI. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT.

In their motion for preliminary approval of the settlement, Plaintiffs requested that the Court certify the Settlement Class for settlement purposes only so that notice of the Settlement, the Final Approval Hearing, and the rights of Settlement Class Members to object to the Settlement and request exclusion from the Settlement Class could be issued. For purposes of effectuating this Settlement, the Court should finally certify the Settlement Class. As mentioned in the Court's Order, dated October 15, 2024, the Court preliminarily certified the proposed class. The class, as preliminary certified is:

> All Temple undergraduate, graduate and professional students who paid their tuition and/or University Services Fee obligations from any source for the Spring 2020 Semester, enrolled in at least one in-person, on-campus class during the Spring 2020 Semester, and remained enrolled after March 16, 2020.

ECF 62 ¶ 6. Excluded from the Settlement Class are (1) any person who withdrew from Temple on or before March 16, 2020; (2) any person who was enrolled solely in a class or classes that were originally intended to be taught in an online format in the Spring 2020 Semester even before the COVID-19 pandemic; (3) any person who received a full scholarship/grants from Temple or otherwise was not obligated to make contributions, payments or third-party arrangements towards tuition or fees for the Spring 2020 Semester; (4) any Judge or Magistrate Judge presiding over these Actions and members of their families; (5) any person who properly executes and files a timely request for exclusion from the Settlement Class; and (6) the legal representatives, successors or assigns of any such excluded persons. *Id.* Since the Court's entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes. Thus, for all of the reasons stated in Plaintiffs' Motion for Preliminary Approval (ECF 61) (incorporated herein by reference), Plaintiffs respectfully request that the Court affirm its preliminary certification and finally certify the

Settlement Class for purposes of carrying out the settlement pursuant to Fed. R. Civ. P. 23(a) and

23(b)(3) and make a final appointment of Plaintiffs as the class representatives and Class Counsel

as class counsel.

## VII.    NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the

circumstances, including individual notice to all members who can be identified through

reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a

"reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and

due process where it is "reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections."

*In re NFL*, 821 F.3d at 435 (citation omitted). The Third Circuit has also explained that "[g]enerally

speaking, the notice should contain sufficient information to enable class members to make

informed decisions on whether they should take steps to protect their rights, including objecting to

the settlement or, when relevant, opting out of the class." *In re Baby Prod. Antitrust Litig.*, 708

F.3d 163, 180 (3d Cir. 2013).

Here, the Notice and the method used to disseminate the Notice to potential Settlement

Class Members satisfy these standards. The Court-approved Notice amply informed Settlement

Class Members of, among other things: (i) the pendency of the Action; (ii) the nature of the Action

and the Settlement Class's claims; (iii) the essential terms of the Settlement; (iv) the proposed

manner of distribution of the Available Settlement Fund; (v) Settlement Class Members' rights to

request exclusion from the Settlement Class or object to the Settlement, the manner of distribution,

or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Settlement

Class Members; and (vii) information regarding Class Counsel's motion for an award of attorneys'

fees and expenses and incentive awards for Plaintiffs. The Notice also sets forth the procedures and deadlines for: (i) requesting exclusion from the Settlement Class and (ii) objecting to any aspect of the Settlement, including the proposed distribution plan and the request for attorneys' fees and expenses and incentive awards for Plaintiffs.

Settlement Class Members were mailed and/or emailed notices after a thorough address validation process. *See* Cowen Decl. ¶¶ 7-14. Emails were sent to 38,371 unique email addresses, with 35,227 confirmed as delivered. Cowen Decl. ¶¶ 7-11. For the Settlement Class Members who did not have a valid email, or whose email was not delivered or bounced back, A.B. Data mailed 5,832 Notices via First-Class Mail, with only 130 returned as undeliverable. Cowen Decl. ¶¶ 12-14. In total, approximately 99.6% of the Settlement Class received notice of the proposed Settlement.

Additionally, a settlement-specific website was created where key settlement documents were posted, including the Long Form Notice. *See* Cowen Decl. ¶ 16. Settlement Class Members had until January 13, 2025 to object to the Settlement or request exclusion from the Settlement Class. To date, there have been no objections to the settlement, and no requests for exclusion. Cowen Decl. ¶¶ 17-18.

Notice programs, such as the one deployed by Class Counsel, have been approved as adequate under the Due Process Clause and Rule 23. *See In re CertainTeed*, 269 F.R.D. 468. And, in other COVID-19 refund actions against other universities, substantially similar methods of notice have been preliminarily approved. *See, e.g.*, *Wright v. S. New Hampshire Univ.*, No. 20-cv-609-LM, 2021 WL 1617145, at *2 (D.N.H. Apr. 26, 2021); *see also Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM, Order, (S.D.N.Y. Mar. 30, 2021). For these reasons, Notice satisfied the requirements of Rule 23 and due process.

## **CONCLUSION**

The $6,900,000.00 Settlement Fund plus additional Non-Cash Benefit Settlement obtained by Plaintiffs and Class Counsel represents an excellent recovery for the Settlement Class, particularly in light of the significant litigation risks the Settlement Class faces, including the very real risk of the Settlement Class receiving no recovery at all. For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the proposed Settlement and the proposed manner of distribution of the Available Settlement Fund as fair, reasonable, and adequate.


Dated: February 12, 2025                    Respectfully submitted,

                                            */s/ Gary F. Lynch*
                                            Gary F. Lynch (PA ID No. 56887)
                                            Nicholas A. Colella (PA ID No. 332699)
                                            **LYNCH CARPENTER, LLP**
                                            1133 Penn Avenue, 5th Floor
                                            Pittsburgh, PA 15222
                                            Phone: (412) 322-9243
                                            NickC@lcllp.com

                                            Paul J. Doolittle
                                            **POULIN WILLEY**
                                            **ANASTOPOULO, LLC**
                                            32 Ann Street
                                            Charleston, SC 29403
                                            Tel: 843-614-8888
                                            pauld@akimlawfirm.com

                                            Stuart A. Carpey
                                            **CARPEY LAW, P.C.**
                                            600 W. Germantown Pike,
                                            Suite 400
                                            Plymouth Meeting, PA 19462
                                            Tel: 610-834-6030
                                            scarpey@carpeylaw.com

                                            *Attorneys for Plaintiffs and the Settlement*
                                            *Class*